JOHN F. STEIN, PLAINTIFF IN ERROR, *vs.* WILLIAM BOWMAN AND OTHERS, DEFENDANTS IN ERROR.

Certain German documents were offered in evidence by the plaintiff, in the District Court of Louisiana, for the purpose of using such parts of them as contained depositions which related to the pedigree of the plaintiff, which were overruled by the District Court, on the ground that they were not duly authenticated. By the Court: In the case of Church *vs.* Hubbart, 2 Cranch, 187, this Court held, that the certificate of a consul, under his consular seal, is not a sufficient authentication of a foreign law to make it evidence; it not being one of his consular functions to grant such certificates. And also, that the proceedings of a foreign Court, under the seal of a person who styles himself the Secretary of Foreign Affairs in Portugal, is not evidence. On the principles of this case, the Circuit Court very properly rejected the depositions offered. The certificate and seal of the minister resident for Great Britain, from Hanover, is not a proper authentication of the proceedings of a foreign Court, or of the proceedings of an officer authorized to take depositions. It is not connected in any way with the functions of the minister. His certificate and seal could only authenicate those acts which are appropriate to his office.

The only mode in which depositions can be taken in a foreign country, is under a commission.

No rule is better established than that a party cannot be a witness in his own case.

The objection to the competency of a party to a suit as a witness, does not arise so much from the small pecuniary liability to the payment of the costs, as from that strong bias which every party to a suit must naturally feel; and this influence is not the less dangerous, if the party be unconscious of its existence. Every individual who prosecutes or defends a suit, is, in the nature of things, disposed to view most favourably his own side of the controversy, and, with no small prejudice, the side of his adversary. To admit a party on the record, under any circumstances, to be sworn as a witness in chief, would be attended with great danger. It would lead to perjuries, and the most injurious consequences, in the administration of justice.

From necessity, in cases of pedigree, hearsay evidence is admissible. But this rule is limited to the members of the family, who may be supposed to have known the relationship which existed in the different branches. The declaration of these individuals, they being dead, may be given in evidence to prove pedigree. And so is reputation; which is the hearsay of those who may be supposed to have known the fact, handed down from one to another; evidence. As evidence of this description must vary with the circumstances of each case, it is difficult, if not impracticable, to deduce from the books any precise and definite rule on the subject.

It is not every statement or tradition in a family that can be admitted as evidence. The tradition must be from persons having such a connexion with the party to whom it relates, that it is natural and likely, from their domestic habits and connexions, they are speaking the truth, and that they could not be mistaken.

The declarations offered as evidence were made subsequent to the commencement of the controversy, and, in fact, after the suit was commenced. It would be extremely dangerous to receive hearsay declarations in evidence respecting any matter, after the controversy has commenced. This would enable a party, by ingenious contrivances, to manufacture evidence to sustain his cause. It is therefore, essential, when declarations are offered as evidence, that they should have been made before the controversy originated; and at a time and under circumstances when the person making them could have no motive to misrepresent the facts.

It is a general rule, that neither husband nor wife can be a witness for or against each other. This rule is subject to some exceptions, as when the husband commits an offence against the person of his wife.

The husband and wife may be called as witnesses in the same case, and if in their statement of facts they should contradict each other, that would not destroy the competency of either. It would not follow from such contradiction, that either was guilty of perjury. And in some cases, the wife may be a witness under peculiar circumstances, where the husband may be interested in the question, and, to some extent, in the event of the cause.

s 2                    27

[John F. Stein *vs.* William Bowman et al.]

The wife cannot be a witness to criminate her husband, or to state that which she has learned from him in their confidential intercourse. The rule which protects the domestic relations from exposure, rests upon considerations connected with the peace of families; and it is considered that this principle does not afford protection to the husband and wife, while they are at liberty to invoke it or not, at their discretion, when the question is propounded; but it renders them incompetent to disclose facts in evidence in violation of the rule. The husband being dead, does not weaken the principle. It would seem rather to increase than lessen the force of the rule.

To sustain a claim to the admission of the deposition of a witness in evidence, the affidavit of a person who represented himself to be the agent of the plaintiff, stated that the witness had left Louisiana before the commencement of the suit, and ascended the Mississippi, with the intention of going to Ohio; and that since then, the person who made the affidavit had not heard from him, although he had made inquiries. By the Court: This does not amount to that degree of diligence which the law requires to introduce secondary evidence.

IN error to the District Court of the United States for the eastern district of Louisiana.

In the District Court of the eastern district of Louisiana, on the eighth day of April, 1836, Johann Frederick Stein, an alien and a subject of the King of Hanover, presented a petition, stating that he was the sole and lawful heir of Nicholas Stein, or sometimes called Nicholas Stone, who had died some time before, in the parish of St. Tammany, in the state of Louisiana. The petition prayed that William Bowman, who had been appointed curator of the estate of the deceased Stein, by the proper tribunal, should be decreed to account for the estate and effects received by him, and to deliver to the petitioner the property of the succession which had not been sold, and to pay to him the amount in his hands.

The answer of William Bowman, the curator, denied that the petitioner, Johann Frederick Stein, was the heir or related to the deceased Nicholas Stein, or Stone; and averred that the claim was interposed to vex and harass the respondent, and the true heirs of Nicholas Stein.

Afterwards, Andreas Stein, residing in the kingdom of Hanover, presented a petition to the District Court, stating that in April, 1834, he had applied to the Court of Probate, of New Orleans, claiming the succession to Nicholas Stein, as the heir of the deceased, and that by the unjust interference of Johann Frederick Stein, he had been prevented recovering the same.

Subsequently, Johann Stein, Anna Sophia Stein, wife of Mathias Ahreus, and Luer Stein, a minor, assisted by his curator or trustee, and by his guardian, all of the kingdom of Hanover, filed their petition in the Circuit Court, stating that they are the only heirs of Nicholas Stein, and that in 1835 they had instituted a suit against William Bowman, which suit is still pending. They aver that the claim of Johann Frederick Stein is fraudulent, and that he is not the heir of Nicholas Stein, as he alleges. They pray leave to introduce in the suit, and state that William Bowman is a mere stakeholder. William Bowman afterwards filed a petition in the District Court, setting forth that individuals belonging to three different families, the petitioners, pretend to be the nearest relations of the late Nicho-

las Stein, and to be entitled to his estate; and he asks, as he is only a stakeholder, that the parties contesting the claims of each other may be called in to take cognizance of this suit, and defend him against it.

The petitioner, Johann Frederick Stein, put in a general replication to each of the petitions of intervention.

The case was, on the application of William Bowman, referred to a jury, and on the 3d of March, 1837, it came on for trial; and the jury found a verdict for the defendant.

On the trial of the cause, bills of exceptions were signed by the Court to the decisions of the Court, on points arising during the trial of the cause.

The affidavit of John Rist was laid before the Court, stating that he had made diligent inquiry for Francis Stuffle, whose deposition was taken in the cause in the parish Court, between the plaintiff and Bowman; "that he was unable to find him, and had been informed, and truly believed he was dead; this information had been derived from those who knew him."

The deposition also stated, that Nicholas Mouzat, whose testimony was taken in the same cause, left Louisiana before the commencement of this suit, and ascended the Mississippi with the intention of going to the state of Ohio; that he had not since heard from him, although he had made inquiries for him.

The deposition of Francis Stuffle was then offered in evidence by the plaintiff, and was admitted by the Court; to which the defendant excepted.

The defendant called the wife of Francis Stuffle, he being dead, to prove that her husband had been bribed by John Rist to give evidence in the case; and also to prove he had frequently told her he knew nothing of the plaintiff, or of Nicholas Stein. The plaintiff objected to the admission of the witness; but the Court allowed her to be sworn, and she gave her testimony. The plaintiff excepted.

The plaintiff then offered in evidence certain German documents, to prove the pedigree of the petitioner, which were rejected by the Court, as not being sufficiently authenticated; and to this rejection the plaintiff excepted.

The depositions which were taken, and which were in the German language, were not signed by the deponents; and at the end of each deposition, it is stated that each of the witnesses assented to the same. A magistrate of the place certifies to this fact, and this is attested under his seal by the "Royal British Hanoverian Landrostey;" and his signature is attested under his seal, by the "Royal British Hanoverian Minister Residentis."

The defendant, William Bowman, was, during the trial, admitted as a witness by the Court, to testify as to the merits of the controversy. The plaintiff excepted to his admission.

The Court refused to admit Stultz as a witness for the plaintiff,

[John F. Stein *vs.* William Bowman et al.]

to prove that he had been in Hanover the preceding summer, and there heard from many old persons of whom he inquired, that the plaintiff was the brother of Nicholas Stein. The witness stated that he had gone to Germany for the purpose of taking a deposition: the Court were of opinion, that the depositions of those persons should have been taken.

The plaintiff prosecuted this writ of error.

The case was submitted to the Court, in printed arguments, by Mr. Crittenden, for the plaintiff in error; and by Mr. Garland for the defendant.

Mr. Crittenden, for the plaintiff in error, stated that:

The plaintiff, J. F. Stein, insists that the Court erred in all the opinions and decisions excepted on his part, and has prosecuted a writ of error, to reverse the judgment rendered against him.

A decision by this Court, on all the questions presented by these bills of exceptions, will probably be necessary to the proper final disposition of the case in the Court below, and, therefore, they are all insisted upon, and submitted to this Court. If the single object was merely a reversal of the judgment, it is supposed that errors obvious and sufficient for the purpose are made manifest by the bills of exceptions.

From the first exception it appears that the Court permitted Bowman, the defendant, to become a witness in his own case; and, in the second, that a woman was permitted to violate the sacred confidence and intimacy of married life, by giving testimony to betray and criminate her deceased husband. The law condemns it. Starkie on Evidence, vol. ii. part 4, page 705, &c., and 709, &c.

Mr. Garland, for the defendant in error.

Nicholas Stein, generally called and known as Nicholas Stone, died in the parish of St. Tammany, Louisiana, in the year 1833, leaving an estate estimated to be worth about twenty-five thousand dollars. In October 1833, Bowman, one of the present defendants, was appointed by the proper tribunal, curator of the estate, and took upon himself the administration.

The plaintiff alleges that Nicholas Stein died without leaving either legal ascendants, descendants, or collaterals, except himself; and that he is the only brother and sole heir. That the term allowed by law to Bowman to administer the estate has expired, and he is entitled to the whole of it. He therefore asks for an account and payment of the amount that has been received.

Bowman denies positively that the plaintiff is the brother or any relation of Nicholas Stein, deceased; and says that his claim to the estate is unfounded and fraudulent, and intended to defraud, vex, and harass him and the real heirs.

Andrew Stein intervenes in the suit, and alleges he is the nearest of kin, and sole heir of Nicholas Stein, and claims the estate;

[John F. Stein *vs.* William Bowman et al.]

and that he has instituted a suit in one of the state tribunals, to wit, the Probate Court of the parish of St. Tammany, to recover it; which suit was then, and is now pending.

Johann Stein, Anna Sophia Stein, wife of Mathias Ahreus, and Luer Stein, a minor, also intervene in the suit; and say they are the only heirs of Nicholas Stein, and claim the estate.

In answer to all these petitions, Bowman, the defendant, answers, that he is merely a stakeholder; that he has three suits pending against him to recover the same property, to wit, the case now on trial, and two suits in St. Tammany.

The plaintiff and appellant answers the two petitions of intervention, and take issue with the parties named in them, as to their claims to be recognised as heirs.

Nicholas Stein, it appears from the testimony, came to the United States about thirty years previous to his death, from the kingdom of Hanover. After his arrival, he never heard from any of his relations, or did he ever have any intercourse with them, except writing one letter, which is in the possession of one of the interpleaders, addressed to him as a brother.

The record shows that a man named Rist (who is a gambler in Louisiana) is the person who is prosecuting this claim in the name of the plaintiff and appellant. We allege it is fraudulent, and is attempted to be sustained by perjury; and that Rist is the party really interested.

It also very satisfactorily appears that a suit was instituted in 1834, by the appellant, or rather by Rist, in his name, in the Probate Court of the parish of St. Tammany, against the appellees, to recover this same property. This was in the parish where Nicholas Stein had resided many years previous to his death, and where all the circumstances relating to his affairs were known. That suit was decided against the plaintiff on the merits. He took an appeal to the Supreme Court of the state, where every point taken in the inferior Court, and decided upon in the course of the trial, was affirmed; but that tribunal set aside the final judgment on the merits, without giving any reason for so doing, and entered up a judgment of nonsuit. The cause was tried by a jury, and after an investigation of three days a general verdict was rendered in favour of the defendant, on the 4th of March, 1837.

On the 11th of March, 1837, the plaintiff, in an informal manner, moved the Court for a new trial, on various grounds; which motion was rejected, because not asked for within the delay prescribed by law and the rules of the Court. It will not be denied, that so far as all questions of practice are involved, that the laws of the state of Louisiana, and the decisions of its Courts, are to govern in the Courts of the United States. 7 Laws United States, p. 315.

In this case a new trial cannot be awarded, and the cause remanded, even if the Court should be of opinion there was error in the decision of any of the points made in the District Court; be-

cause the appellant has abandoned or lost the right he may have had to have his case revised or examined in that way. A new trial being one of the modes prescribed by law of having a judgment revised or re-examined, if the party does not avail himself of it in the manner and within the time directed, he can no more have that benefit than he could that of an appeal, if he had not taken it within the time and in the manner directed by law. Louisiana Code of Practice, articles 556, 557. 4 Martin's Reports, N. S. 532.

The manner of applying for a new trial, and the time within which the application must be made, is specially and particularly described; and the appellant has not complied with the law in a single particular. Louisiana Code of Practice, articles 558, 559, 560, 561.

Taking it for granted that the Court will not remand the cause, it must be examined on its merits; and it is submitted whether there are sufficient grounds to set aside the verdict of the jury, and reverse the judgment. The law of the case is very plain, if the plaintiff has sustained his allegations by proof. Is he the sole relative in the ascending, descending, or collateral line to Nicholas Stein, deceased? If he is, there is an end of the question. Is there enough on the record to satisfy the Court that he is, even admitting all the evidence rejected in the Court below? It is not sufficient the plaintiff should show he is a brother; but before he can claim the whole estate he must show the father and mother of Nicholas Stein are dead. If both or either of them are alive, the brother cannot inherit the whole estate; because in Louisiana ascendants inherit as well as brothers and sisters. Ascendants are what are called forced heirs, and like descendants, cannot be disinherited, even by testament, but for cause. Fathers or mothers do not entirely exclude brothers or sisters, or their descendants; but, before these last can inherit solely, they must show no forced heirs are living. Louisiana Code, articles 883. 899. 907, 908. 1481, 1482. 12 Martin's Reports, 390.

As to the plaintiff's first bill of exception, it is not necessary to say any thing. It is taken to the admission of Bowman's affidavit, offered for the purpose of affecting the jurisdiction of the Court; and as the Court afterwards decide that the exception to the jurisdiction was made too late, there is no necessity for it, unless the Court shall consider it in connexion with the defendant's third bill of exception.

The second bill of the plaintiff is taken to the rejection of certain documents in the German language. These are the same papers that were offered in evidence in the first suit of the Probate Court, rejected by it, and that decision affirmed by the Supreme Court of the state of Louisiana. It is sufficient to refer to that decision. Louisiana Reports, vol. ——, page ——, and the decisions therein referred to.

[John F. Stein vs. William Bowman et al.]

The plaintiff's third bill is to the admission of Bowman as a witness. The bill does not specify any particular objection, which it certainly ought to do, and the Court is left to conjecture the ground of exception. No objection to the defects in the bill are intended to be waived; on the contrary, we insist on all the legal exceptions to it. It is supposed the objection to Bowman is that he is a party on the record. But the Court will recollect he has no personal interest in the case. He is a mere stakeholder, ready to deliver any property or money he has in possession to whoever is legally entitled to receive it. The plaintiff has never been recognised as an heir. If he had been, and then Bowman refused to pay over, the case would be different.

As to the recognition of heirs and their rights, before and after, the Court is respectfully referred to Louisiana Code, articles —; Louisiana Code of Practice, articles Nos. 1000—1004, and the amendment at page 348.

Bowman is not individually liable for costs, until the plaintiff shall be recognised as heir, and he has put him in delay; until then he is the representative of all persons interested, and the costs are paid out of the estate. As a stakeholder, Bowman is a competent witness.

The plaintiff's fourth bill is to the rejection of Stultz as a witness. The Court was certainly correct in rejecting his testimony. The cases in which hearsay testimony is admitted are all specified. They are exceptions to a general rule, and the counsel for the appellant must show that this is one of the exceptions. It will be difficult, it is believed, to convince the Court that the authority referred to will authorize the reception of the evidence of this witness. The persons whose declarations are to be stated are alive. It is, besides, shown to the Court that the plaintiff or appellant has alleged that he had documentary evidence of his being the heir, and that he offered it in evidence, but it was rejected, because not presented in a legal shape. Ancient boundaries and pedigree may sometimes be proved by tradition, and the common understanding of old persons; but affinity and the relationship of collateral heirs do not come within the rule.

The plaintiff's fifth bill is to the admission of Mrs. Stupfel, or Stuffle, to testify as a witness. There is no known law, that prohibits man and wife from giving testimony in a cause between third persons, or prohibits the wife from contradicting the husband, or proving any other facts she may know. She cannot testify for or against him in a suit in which he is a party, or interested.

The plaintiff's sixth bill of exception is to the rejection of a deposition of a witness named Mouzat, which had been taken under a commission issued in the suit, in the probate Court, and which the plaintiff wished to read as evidence in this suit, on the pretext that Mouzat was absent, and could not be found. The judge was not

satisfied of his absence; it was not pretended he was dead.   It does not appear any effort was made to procure his attendance. or have his deposition taken.

The plaintiff's seventh bill of exception, is to the refusal of the Court to award a new trial, or to permit a motion for it, and the grounds to be filed.   The district judge was certainly correct in his opinion.   By the rules of the Court, the time had expired, and the motion was not made in the manner or the time prescribed by law.   Louisiana Code of Practice, articles Nos. 557—561.

If in conformity with this opinion, that the Court cannot send the cause back for a new trial, and it shall proceed to investigate the merits, it will not perhaps be necessary to decide on any of the defendants' bills of exceptions.   But if the Court should determine to send the cause back, contrary to expectation, or should it be considered necessary in the investigation, it is not intended to waive any legal ground taken in them.

The first exception of the defendants is to the reception by the district judge of a document called a deposition de bene esse, of a person called Henry Munget.   It is not taken by the authority of any Court, nor is any notice given to the defendants of its being taken.   As to the first ground taken in the bill, see Louisiana Code of Practice, articles 424—431, &c.; also, amendment, page 156.   As to the second and third grounds, it is not necessary to produce authorities.   The fourth is settled by the decision given in the Supreme Court of Louisiana, in this case, already referred to.

The defendant's second exception is to the admission of the deposition of Francis Stupfel, or Stuffle.   As to first and third grounds, it is sufficient to refer again to the case between these parties in the Supreme Court of Louisiana.   As to the second a reference is made to Code of Practice, articles 430—435, &c.

The verdict of the jury has negatived every allegation of the plaintiff that he is a brother or heir of Nicholas Stein, deceased; and it is presumed the Court will not disturb it.

Mr. Garland also submitted an additional printed argument.

He stated, that as to the plaintiff's third bill of exception, he would refer the Court to Martin's Rep. N. S. vol. iv. p. 21 ; and also to page 72 of the same volume, and 10 Martin, 637, as applicable to the point under consideration, and to several others in the case. The Court are asked to attend particularly to what Bowman states in his affidavit: it is, that Rist is the real party, having purchased all the rights of Stein, the plaintiff, and he could prove it by witnesses who are named in the affidavit, who were afterwards introduced, and actually did prove it.   The facts stated by Bowman having been proved by other legal testimony, the bill ought not to be noticed.   5 Martin's Rep. 213.

Bowman is competent to testify as to the identity or relationship of Stein, the plaintiff, in a case where several are claiming the pro-

perty in his possession. It is a matter of no concern to him who is recognised as the heir. He has to pay to whoever shall recover. The costs are paid out of the estate. His commissions, as curator, are neither increased nor diminished, nor has he any interest in the event of the suit which will disqualify him. The case would be different were a stranger claiming something of the curator as a debt, or if he were claiming a debt, or the benefit of a contract. The effect of his evidence then, would be to increase or diminish the amount of the succession, and, consequently, the compensation of the curator. Bowman is the legal agent of all the heirs, or those claiming as such, until some one is recognised as heir according to law. To test the competency of Bowman, the Court have only to examine whether he will directly gain or lose any thing by the event of this suit. 2 Martin's Rep. N. S. 333; 4 N. S. 539; 3 N. S. 11; also, 166.

The question raised by the plaintiff's fifth bill of exception is, whether the widow of Francis Stuffle can testify to what her deceased husband told her previous to his death; which statement would go to discredit his evidence. She is certainly a competent witness to testify in the case, and the plaintiff must show such questions as are propounded ought not to be answered. Has he done so? By answering the question, would she criminate her husband, subject him to any penalty or action of any kind? Clearly not, for hs is beyond the reach of any legal proceedings. No breach of confidence is involved, nor do the relations exist; in which it is the object of the law to preserve harmony, by preventing the husband or wife from testifying as to what one tells the other. The authority cited by the counsel does not go the length that is contended. It is hoped the Court will examine it particularly, and reference is made to the second English edition of Starkie on Evidence, vol. ii. 401, 402, and the authorities there cited.

In the case of the King vs. the inhabitants of All Saints, Worcester, the Court evidently intended to narrow very much, if not entirely contradict the positions previously taken, which Starkie says were certainly too extensive and indefinite. The only effect of the evidence of Mrs. Stuffle would be to cast a reflection upon the memory of her deceased husband. During his lifetime she might have been called to prove what might have disgraced him, and he might have been compelled to answer himself a question that would have had the same effect. 1 Starkie, second English edition, pages 167 to 172, inclusive.

The Court were also referred to the opinion of the Supreme Court of Louisiana, in a suit between the same parties, decided on the 21st of March, 1836.

Mr. Justice M'LEAN delivered the opinion of the Court.—

This case was brought originally in the District Court of the United States for the eastern district of Louisiana; and on the trial certain exceptions were taken to the ruling of the Court by the

plaintiff, and which he now brings before this Court on a writ of error.

The action was brought by petition, in the form peculiar to the Courts of Louisiana, to compel the defendant to render an account as curator of the estate of Nicholas Stone, or Stein, deceased.

The plaintiff represents himself as an alien, and as the only heir at law of the deceased.

Some time after the defendant had answered the petition, Johann Stein, and others, filed their petition of intervention, denying the statements in the plaintiff's petition, and representing themselves to be the true heirs of the deceased.

The cause was submitted to a jury; and on the trial, to sustain his case, the plaintiff offered in evidence certain German documents, for the purpose of using such parts of them as contained the depositions which related to the pedigree of the plaintiff; which were overruled by the Court, on the ground that they were not duly authenticated. And this constitutes the first exception.

Several depositions appear to have been taken, but none of them were signed by the deponents. At the close of them it is stated: "After the preceding depositions were read to the deponents, they gave their assent to them and approbation.

[Seal.]                             (Signed) R. V. D. Busseke.

Seen, for attestation of the preceding signature, of the Royal Amtsvagtey Burgwedel.

Luneburg.
Royal British Hanoverian Landdrostey.
    [Seal.]                                          Ruemern."

To which is added:—
"The subjoined signature of the Royal Britannic Land Bailiwick at Luneburg is hereby attested.

Hamburg, Sept. 19th, 1834
Royal Britannic Hanoverian Minister Residentis.
Im Ausftrage by authority.                         G. W. Kern."
    [Seal.]

In the case of Church vs. Hubbart, 2 Cranch, 187, this Court held that a certificate of a consul under his consular seal, is not a sufficient authentication of a foreign law to go in evidence; it not being one of his consular functions to grant such certificates. And also that the proceedings of a foreign Court, under the seal of a person who styles himself the Secretary of Foreign Affairs in Portugal, is not evidence.

On the principle of this case, it would seem that the Court very properly rejected the depositions offered.

The certificate and seal of the minister resident from Great Britain in Hanover, is not a proper authentication for the proceedings of a foreign Court, or of the proceedings of an officer authorized to take

depositions. It is not connected in any way with the functions of the minister. His certificate and seal could only authenticate those acts which are appropriate to his office.

The authority to take the depositions by the person before whom they were taken no where appears; and it is not shown that the Royal Britannic Hanoverian Land Bailiwick, Ruemern, was authorized to attest, as he has done, the signature of R. V. D. Busseke.

If the attestation of the signature, and right of the person who administered the oaths, were duly certified under the seal of a responsible officer, whose appropriate duty it was to give such certificate, it might be received, so far as the authentication goes, as prima facie evidence, though not under the great seal of the state. It may be proper, however, to remark, (though the point was not raised in the Court below,) that if the authentication had been sufficient, the depositions would have been inadmissible, they not having been taken under a commission; which is the only mode by which depositions in a foreign country can be taken.

In the course of the trial, Bowman, the defendant, was admitted as a witness by the Court; and, being sworn, gave evidence to the jury respecting the merits of the case. And to this decision of the Court, overruling the objection made, the plaintiff also excepted.

No rule is better established, than that a party, in an action at law, cannot be a witness in his own case.

In the case of Scott vs. Lloyd, 12 Peters, 149, this Court said, "The decision in 1 Peters, C. C. R. 301, where the Court held a party named on the record might be released, so as to constitute him a competent witness, has been cited and relied on in the argument." "Such a rule," the Court remarked, "would hold out to parties a strong temptation to perjury; and we think it is not sustained either by principle or authority."

Bowman was a party on the record, was curator, as represented, and was prima facie liable for the costs of suit.

But if there could have been a release for the costs executed, or the money to cover the costs had been paid into Court, his competency would not have been restored.

The objection to his competency does not arise so much from the small pecuniary liability to the payment of costs, as from that strong bias which every party to a suit must naturally feel. And this influence is not the less dangerous, if the party be unconscious of its existence. Every individual who prosecutes or defends a suit is, in the nature of things, disposed to view most favourably his own side of the controversy, and, with no small degree of prejudice, the side of his adversary. We think, therefore, to admit a party on the record, under any circumstances, to be sworn as a witness in chief, would be attended with great danger. It would lead to perjuries, and the most injurious consequences, in the administration of justice. We think, therefore, the Court erred in admitting Bowman as a witness.

The next exception of the plaintiff arises from the rejection of Stultz as a witness, who was introduced to prove that he had been in Hanover, in Germany, "last summer;" and there heard, from many old persons of whom he inquired, that the plaintiff was the brother of Nicholas Stone, deceased.

And this Court have no doubt that this evidence was properly overruled by the District Court.

From necessity, in cases of pedigree, hearsay evidence is admissible. But this rule is limited to the members of the family, who may be supposed to have known the relationships which existed in its different branches. The declarations of these individuals, they being dead, may be given in evidence to prove pedigree; and so is reputation, which is the hearsay of those who may be supposed to have known the fact, handed down from one to another, evidence. As evidence of this description must vary by the circumstances of each case, it is difficult, if not impracticable, to deduce from the books any precise and definite rule on the subject.

"It is not every statement or tradition in the family that can be admitted in evidence." The tradition must be from persons having such a connexion with the party to whom it relates, that it is natural and likely, from their domestic habits and connexions, that they are speaking the truth, and that they could not be mistaken. 1 Philips, 174. 2 Dallas, 116.

The declarations proposed to be proved by the witness, do not appear to have been made by members of the family, or by persons who had such connexions with the deceased as to have a personal knowledge of the facts stated. And these persons, for aught that appears, are still living; and their depositions might be taken.

On both these grounds, the evidence was inadmissible. But there is another ground on which the opinion of the District Court can be sustained, and it is proper to state it.

The declarations offered as evidence were made subsequent to the commencement of this controversy, and, in fact, after the suit was commenced.

It would be extremely dangerous to receive hearsay declarations in evidence respecting any matter, after the controversy has commenced. This would enable a party, by ingenious contrivances, to manufacture evidence to sustain his cause. By interrogatories propounded in a cautious manner to unsuspecting individuals, he might elicit the answers he most desired.

It is therefore essential, when declarations are offered as evidence, that they should have been made before the controversy originated, and at a time, and under circumstances, when the person making them could have no motive to misrepresent the facts. 4 Camp. 409. Case of the Berkley Peerage.

The plaintiff having read the deposition of Francis Stuffle, deceased, in evidence, the defendant called the wife of the deceased to prove, as stated in the bill of exceptions, that her husband had been bribed by John Rist to give evidence in that case, and also to

prove that he had frequently told her he knew nothing of the plaintiff, or of Nicholas Stone deceased. The plaintiff objected to the swearing of the witness, but the Court overruled the objection, and permitted the witness to give evidence. To this opinion the plaintiff excepted.

It is a general rule that neither a husband nor wife can be a witness for or against the other. Co. Lit. 6, <sup>b</sup>. Hawk, b. 2, ch. 46, s. 70. Gilb. Ev. 11. Bull. N. P. 286. Fitch *vs.* Hill et al. 11 Mass. 286.

This rule is subject to some exceptions; as where the husband commits an offence against the person of his wife. 1 Hale, P. C. 301. Hawk. b. 2, c. 46, s. 77. Bull. N. P. 287. 1 Bl. Com. 413. The wife may exhibit articles of the peace against her husband. Bull. N. P. 287.

The husband and wife may be called as witnesses in the same case, and if in their statement of facts they should contradict each other, that would not destroy the competency of either. It would not follow, from such contradiction, that either was guilty of perjury.

And in some cases, the wife may be a witness, under peculiar circumstances, where the husband may be interested in the question, and, to some extent, in the event of the cause. 8 East, 203. Gilb. Ev. 139.

In the case of the King *vs.* Cliviger, 2 Term, 268, the Court held that a wife should not be called in any case to give evidence even tending to criminate her husband. Mr. Justice Grose, in that case, observed, " In all the books which treat of evidence, there are certain technical rules laid down, which are highly beneficial to the public, and ought not to be departed from. Some of these relate to husband and wife; and we find the general rule as to them to be founded, not on ground of interest, but of policy, by which it is established that a wife shall not be called to give testimony in any degree to criminate her husband. And Lord Holt says, that she shall not be called, indirectly, to criminate him. And the rule seems to have governed all the decisions from that time to the present."

In the case of the Executrixes of Stead *vs.* Pritchett, 6 Term R. 680, the Court said, " Ratcliff is one of the plaintiffs on the record; he has, therefore, an interest in the cause, and that cannot be prejudiced by any act, or by the evidence of the wife."

In the case of Aveson *vs.* Kinnaird, 6 East, 192, the counsel asserted in the argument, that the declarations of the wife could not be permitted as evidence to show that her husband had been guilty of fraud, or in any manner to criminate him. And he contended that the rule of law was general, and extended even to cases where the wife was afterwards divorced from her husband. Lord Ellenborough, assenting to the rule, observed, " that goes on the ground, that the confidence which subsisted between them at the time, shall not be violated in consequence of any future separation."

And his Lordship observes, in the same case, " It is sound doc-

T 2

trine, that trust and confidence between man and wife shall not be betrayed."

In this case, however, the Court permitted the declarations of the wife to be given in evidence, as to the bad state of her health about the time the policy of insurance on her life was executed, the action being founded on such policy.

The above case of the King *vs.* Cliviger has been somewhat considered in the Court of King's Bench, in the case of the King *vs.* Inhabitants of All Saints, in Worcester; and the Court seemed to think that the rule laid down in that case was too large and general. But, at the same time, they observed, that the rule in the case of the King *vs.* Cliviger, admitting it to its utmost extent, did not exclude the evidence in the case then under discussion. Philips Ev. 69.

It has been said, that on the grounds of state policy, the wife is a competent witness against her husband in case of treason. Bull. N. P. 289. 1 Brownl. 47. Bac. Ab. Ev. A. 1. But it has since been settled that the wife is not bound to discover the treason of the husband. 1 Brownl. 47.

The law does not seem to be entirely settled how far, in a collateral case, a wife may be examined on matters in which her husband may be eventually interested. Nor whether in such a case, she may not be asked questions as to facts, that may, in some measure, tend to criminate her husband, but which afford no foundation for a prosecution. The decisions which have been made on these points, seem to have been influenced by the circumstances of each case, and they are somewhat contradictory. It is, however, admitted in all the cases, that the wife is not competent, except in cases of violence upon her person, directly to criminate her husband; or to disclose that which she has learned from him in their confidential intercourse.

Some colour is found in some of the elementary works for the suggestion that this rule, being founded on the confidential relations of the parties, will protect either from the necessity of a disclosure; but will not prohibit either from voluntarily making any disclosure of matters received in confidence; and the wife and the husband have been viewed, in this respect, as having a right to protection from a disclosure, on the same principle as an attorney is protected from a disclosure of the facts communicated to him by his client.

The rule which protects an attorney in such a case, is founded on public policy, and may be essential in the administration of justice. But this privilege is the privilege of the client, and not of the attorney. The rule which protects the domestic relations from exposure, rests upon considerations connected with the peace of families. And it is conceived that this principle does not merely afford protection to the husband and wife, which they are at liberty to invoke or not, at their discretion, when the question is propounded; but it renders them incompetent to disclose facts in evidence in violation

[John F. Stein *vs.* William Bowman et al.]

of the rule. And it is well that the principle does not rest on the discretion of the parties. If it did, in most instances it would afford no substantial protection to persons uninstructed in their rights, and thrown off their guard and embarrassed by searching interrogatories.

In the present case the witness was called to discredit her husband; to prove, in fact, that he had committed perjury; and the establishment of the fact depended on his own confessions. Confessions which, if ever made, were made under all the confidence that subsists between husband and wife. It is true the husband was dead, but this does not weaken the principle. Indeed, it would seem rather to increase than lessen the force of the rule.

Can the wife, under such circumstances, either voluntarily, be permitted, or by force of authority be compelled to state facts in evidence, which render infamous the character of her husband. We think, most clearly, that she cannot be. Public policy and established principles forbid it.

This rule is founded upon the deepest and soundest principles of our nature. Principles which have grown out of those domestic relations, that constitute the basis of civil society; and which are essential to the enjoyment of that confidence which should subsist between those who are connected by the nearest and dearest relations of life. To break down or impair the great principles which protect the sanctities of husband and wife, would be to destroy the best solace of human existence.

We think that the Court erred in overruling the objections to this witness.

The next exception by the plaintiff arises from the rejection of the deposition of Mouzat, which had been taken in the case of the parties in the parish Court.

To lay the foundation for reading this deposition, John Rist, who represents himself to be the agent of the plaintiff, swore that the witness left Louisiana before the commencement of this suit, and ascended the Mississippi, with the intention of going to Ohio; and that since then he has not heard from him, although he has made inquiries.

This does not amount to that degree of diligence which the law requires to introduce secondary evidence, and such was the deposition offered.

The plaintiff might have taken out a subpœna, the return of which, not served, would have been better evidence that the witness was not within the judicial district. We think, therefore, that the Court did not err in rejecting the deposition.

For the errors above specified, the judgment of the District Court must be reversed; and the cause sent down for further proceedings.

Mr. Justice BALDWIN dissented.

[John F. Stein *vs.* William Bowman et al.]

This cause came on to be heard on the transcript of the record from the District Court of the United States for the eastern district of Louisiana, and was argued by counsel. On consideration whereof, it is ordered and adjudged by this Court, that the judgment of the said District Court in this cause be, and the same is hereby, reversed with costs; and that this cause be, and the same is hereby, remanded to the said District Court for further proceedings to be had therein, in conformity to law and justice, and the opinion of this Court.