SYLVANIA INDUSTRIAL CORP. *v.* UNITED STATES (No. 3751)[1]

United States Court of Customs and Patent Appeals, May 31, 1934

*Puckhafer & Rode* (*George J. Puckhafer* of counsel) for appellant.
*Charles D. Lawrence,* Assistant Attorney General (*Ralph Folks* and *Daniel I. Auster,* special attorneys, of counsel), for the United States.

[Oral argument April 6, 1934, by Mr. Puckhafer and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, GARRETT, and LENROOT, Associate Judges [2]

BLAND, Judge, delivered the opinion of the court:

This appeal involves four protests against the collector's assessment of a 10 per centum additional duty under section 304, Tariff Act of 1922, which additional duty was assessed on the theory that various imported parts of a machine for the manufacture of cellophane paper were not marked with the name of the country of origin as prescribed by said section 304. In the trial court seven protests were consolidated and were considered, but appeal was taken here from the trial court's judgment as to only four of the protests, the numbers of which are set out in appellant's petition for review. The trial court stated that the only question before

---

[1] T. D. 47144.
HATFIELD, J., did not participate in this case.

it was whether or not the machine and parts were legally marked when imported.

At the trial below, the importer introduced in evidence the testimony of Joseph Warrenbrouck, chief mechanic for the exporter of the machine parts in question, which testimony is positive that every piece of merchandise was marked in the country of origin with the term "Made in Belgium"; that it was marked with die and hammer; that he saw that every piece was marked before it was crated, and that the crates were all sealed and ironed before he left them; that he was present when they were opened in this country and that every piece was marked.

The Government introduced the testimony of customs officials connected with the port of Newport News, Va., directed toward certain admissions made by appellant's said witness Warrenbrouck, and one Roger Wallach, who is president of the Sylvania Industrial Corp., appellant, which corporation installed the machine involved here and other like machines in its manufacturing plant at Fredericksburg, Va., and also affirmative evidence to the effect that at least a portion of the pieces that went into the machine here in question were not marked.

The Government also offered in evidence at the hearing where a portion of the testimony was taken "Exhibit A for identification." Said exhibit was excluded by Judge Brown who heard the testimony, and it was ordered that it be marked for identification. When the case was decided by the Third Division of the United States Customs Court, of which division Judge Brown is not a member, the said court, in an opinion by Judge Cline, concurred in by Judge Evans, held that the ruling of Judge Brown in excluding said exhibit A, which had been marked for identification, was error, and the said exhibit was admitted and considered in evidence. Said exhibit A, marked for identification reads as follows:

OCTOBER 6, 1930.

COLLECTOR OF CUSTOMS, *Norfolk, Virginia.*

SIR: In compliance with your request for further report regarding the marking of the first machine imported by the Sylvania Industrial Corporation, reported by me as not being marked at the time of importation, but marked subsequent to the first examination and prior to the second, I have the honor to advise as follows:

On April 15th and 16th, 1930, I made my first trip to the plant for the purpose of examining the machines, and found that the first machine was in the process of installation. However, the shipment covered by the following entries had arrived at the plant:

Consumption Entry No. 399, dated Dec. 10, 1929, ex S.S. *West Arrow* from Antwerp, Belgium, Oct. 16, 1929, covered by invoice No. 6151, dated at Ghent, Belgium, Nov. 27, 1929—55 cases of machinery.

Consumption Entry No. 113, dated February 13, 1930, ex S.S. *West Arrow*, from Antwerp, Belgium, Jan. 15, 1930, consular invoice No. 403, dated at Ghent, Belgium, Mar. 6, 1930—38 cases of machinery.

Consumption Entry N-130, dated Mar. 8, 1930, ex S.S. *Ala*, from Antwerp, Belgium, Feb. 25, 1930, invoice no. 1032, dated at Ghent, Belgium, Mar. 6, 1930—58 cases of machinery.

On April 16th I made careful examination as to the marking of the country of origin. On the last entry named, No. N-130, invoice no. 1032, the cases were being opened in the plant. There was one piece of machinery which was described on the invoice as "1 Tremie Complet", at a total net weight of 2,185 kilos. I asked for Mr. Joseph Werrebrouck, who was in the plant installing the machine (he is a representative of Sidac), and asked him what part of the machine this was. He stated, "Head for the first machine", and it was so noted on the invoice. I said to him, "This machinery is not marked". He replied: "All machinery from the Belgium firm Sidac, including the first shipment of 55 cases, the cases marked 'Made in Belgium.' The machinery was made by Sidac and not marked 'Made in Belgium'."

I then took up the question of marking with the chief engineer. He stated that SIDAC manufactured the same paper and the same kind of machine as the Sylvania Industrial Corporation, which has bought the patent process for making paper of this kind. SIDAC makes the machines only for themselves and not for sale in Belgium. The Sylvania Industrial Corporation having bought the process from SIDAC, SIDAC makes the machines for this corporation, and for this reason they were not marked with the country of origin. He was then told, as previously stated, that the machine should be marked with a metal plate on each end of the machine, and owing to its length, a metal plate in the center with the words "Made in Belgium."

I also found on the same date that the four electric dynamos and two automatic ream winders—covered by C.E. 113, dated February 13, 1930, invoice No. 403, dated at Ghent, Belgium, Jan. 27, 1930, shipped by SIDAC Jan. 15, 1930, ex S.S. *West Arrow*—were not marked with the country of origin, together with other cases of this shipment.

On the occasion of my first visit I made a careful examination of the machinery and failed to find that any of the parts were marked other than four electric dynamos, which were marked "Suisse." On June 2nd and 3rd I made my second visit to the plant, at which time Dr. Wallach took exception to my ruling in regard to the four electric dynamos, stating that "Suisse" on the plate was Switzerland. I then called his attention to T.D. 41489, Court of Customs and Patent Appeals, wherein it was stated that the word "Aisne" does not comply with the law. On the occasion of this visit, Dr. Wallach, the president of the company, informed me that the machinery had been marked prior to the importation and showed me certain parts of machines which were marked "Made in Belgium." This marking had every indication of having been done with a steel die and hammer, and I am of the opinion that it was done subsequent to the importation and after my first visit to the plant. However, in accordance with my instructions, small metal plates with the words "Made in Belgium" were affixed to the first machine. I respectfully call your attention to the fact that these plates would never have been prepared and fastened to the first machine had it been properly marked when inspected on my first visit, and the fact that these plates were made in this country and fastened to the machine after it was set up would imply that they accepted my ruling in the first instance, but that when they received the usual notice, customs form 4647, "Goods must be legally marked", and found that a 10% penalty had been incurred, this contention arose.

The examination I made of the machinery on my first visit was a thorough one and I saw no indication of marking whatsoever. On my second visit I found some of the parts marked, but not all of them. In fact, the greater number of

the parts were not marked. Such as were marked had been marked by means of a small steel die.

In view of the controversy and at the suggestion of the assistant collector, I again visited the plant on July 29th and 30th, 1930, accompanied by examiner R. W. Fiveash. We made a most careful examination of the first machine set up and both of us found that the first machine failed to show markings on several hundred pieces; and that a large number of pieces, including the first shipment, but intended for the second machine not yet installed, were not marked.

The affidavit submitted by Joseph Werrebrouck that he personally supervised the stamping with a hard steel die of all pieces shipped by SIDAC to Sylvania for the latter's first machine is not in keeping with the facts, for the reason that examinations of machinery on my first visit and on my second and third visits in company with Mr. Fiveash showed hundreds of pieces of this machinery without any markings whatsoever thereon, and they still remain unmarked unless they have been marked since my visit in company with Mr. Fiveash. If Mr. Werrebrouck had supervised the marking of "all pieces shipped by SIDAC," why did he not show me the marking when on the occasion of my first visit to the plant I particularly called his attention to the machinery not being marked. The only reply he made was to the effect that all the packages were marked on the outside, but as SIDAC did not manufacture this machinery for sale in Belgium and it had been manufactured to special order, it had not been marked.

Respectfully,

J. S. ANDREWS.
Examiner and Acting Appraiser.

JSA/mba.

I subscribe to the statements in the above letter so far as they refer to the inspection made on July 29th and 30th, in which I assisted Mr. Andrews.

R. W. FIVEASH, Examiner.

In ruling upon the admissibility of said Exhibit A, the trial court made the following statement:

* * * In our opinion this ruling was in error and we hereby admit the said letter as Exhibit A. Citing Nicholls v. Webbs, 8 Wheaton, 326, 5 L. ed. 628, wherein the United States Supreme Court held that memoranda made by a person in the ordinary course of his business, of acts which his duties required, are admissible in evidence after his death. See also Beaver v. Taylor, 1 Wallace, 637, 17 L. ed. 601, where upon identification of the handwriting of a deceased clerk who had made certain entries in an account book in the ordinary course of his business, the said entries were held to be admissible in evidence.

The opinion then proceeds to discuss Exhibit A, quotes liberally from the same, and concludes as follows:

Upon consideration of all the evidence introduced in the cases at bar, we find that the plaintiff has failed to sustain the burden of proving by the weight of the evidence that these importations were legally marked when they arrived in the United States. * * *

In this court the appellant has assigned as error the action of the trial court in admitting in evidence and giving probative effect to said Exhibit A, and it is with this question that we are here solely concerned.

In Nicholls v. Webb, 8 Wheat. 326, the fact to be proven was that due notice and demand on a promissory note had been made. Over

the objection of one of the parties to the suit, a record of the notarial acts of a deceased notary public which showed such demand and notice was admitted as proof of the fact. The daughter of the notary public testified that her father kept a regular record of his notarial acts and uniformly entered such acts, and that the entry in the records was made by her father. It was held that if the notary had been alive the protest could not have been given in evidence except with his deposition or personal examination to support it. The court held that the death and the other circumstances of the case made the entries in the record competent as proof of the fact.

In *Beaver* v. *Taylor*, 1 Wall. 637, certain letters accompanying receipts showing the payment of taxes, which payment was a necessary fact to be proven in the case, were held to be admissible on the theory that the letters were a part of the *res gestae*.

We find no principle in either of the above cases, or elsewhere in any authority examined, which justifies the holding of the trial court that Exhibit A was admissible. As to whether or not the report of an examiner acting in the same capacity and under the same circumstances as was the examiner and acting appraiser Andrews, reporting the fact that goods which he examined were not marked, is or is not competent we need not decide. It is sufficient to say that the circumstances under which Anderson wrote the letter to the Collector of Customs at Norfolk, Va., are wholly different from the circumstances involved in the two cases relied upon, and the contents of the letter at bar are, as a whole, of an entirely different character than those of the written matter admitted in the two cases above referred to. The letter was written after notice of the imposition of the 10 per centum additional duty had been received by appellant. It occurs to us that this letter was written, at least in part, for the purpose of informing the collector what kind of evidence the collector might be able to produce from Andrews and others in event protest was filed against his action in levying the 10 per centum additional duty.

It will be noticed that in the letter Andrews not only recites conversations and admissions of Dr. Wallach, president of the appellant company, and Joseph Warrenbrouck, who installed the machinery, but that the writer of the letter indulged in arguments as to why he thought the conclusion should be reached that the merchandise was not marked at the time of importation, but was marked in part after importation. We again quote:

* * * I respectfully call your attention to the fact that these plates would never have been prepared and fastened to the first machine had it been properly marked when inspected on my first visit, and the fact that these plates were made in this country and fastened to the machine after it was set up would imply that they accepted my ruling in the first instance, but that when they received the usual notice, customs form 4647, "Goods must be legally marked", and found that a 10% penalty had been incurred, this contention arose.

In the last part of the letter of Mr. Andrews, Exhibit A, is the following:

The affidavit submitted by Joseph Werrebrouck that he personally supervised the stamping with a hard steel die of all pieces shipped by SIDAC to Sylvania for the latter's first machine is not in keeping with the facts, for the reason that examinations of machinery on my first visit and on my second and third visits in company with Mr. Fiveash showed hundreds of pieces of this machinery without any markings whatsoever thereon, and they still remain unmarked unless they have been marked since my visit in company with Mr. Fiveash. If Mr. Werrebrouck had supervised the marking of "all pieces shipped by SIDAC", why did he not show me the marking when on the occasion of my first visit to the plant I particularly called his attention to the machinery not being marked. The only reply he made was to the effect that all the packages were marked on the outside, but as SIDAC did not manufacture this machinery for sale in Belgium and it had been manufactured to special order, it had not been marked.

Clearly, there is no merit in the contention that this character of testimony is admissible in the form of a letter to the collector merely because the writer is dead, when by reason of this fact no cross-examination is possible. Moreover, if it were conceded that the first part of the letter were admissible on the ground that the writer was deceased, the last part, signed by R. W. Fiveash, would not be admissible for that reason. Fiveash was not dead at the time of trial. He testified at the hearing and identified Exhibit A.

While the Government contends that Exhibit A is a report of Mr. Andrews and is made in conformity with the provisions of section 500(a) (4) and (5), which describe the duty of the appraiser, it was the theory of the trial court that the testimony was admissible on account of the death of the writer of the letter, and the Government here in urging the admissibility of the document has not contended that the document *in toto* was admissible if the fact of the death of its author was left out of consideration.

In Corpus Juris, vol. 22, p. 216, under the title "Death of Declarant" we find the following in which there are many citations which need not be discussed here:

[§179] 11. DEATH OF DECLARANT. The rule, in the absence of statute providing otherwise, is that declarations which are objectionable as hearsay are not rendered competent by the fact that the declarant has died since such declarations were made. It has been recognized, however, that an exception to the hearsay rule under such circumstances would be desirable, and in some jurisditions such an exception has been created by statute. * * *

We know of no statute applicable here which renders Exhibit A competent evidence.

In the consideration of this question it is also proper to have in mind that the courts in admitting statements of deceased persons have distinguished between those made *ante litem motam* and those made after the controversy arises in which the statement is made.

*Lamb* v. *Copeland,* 158 N. C. 136, 73 S. E. 797; *Stein* v. *Bowman,* 13 Pet. 209.

Since the trial court evidently gave great weight to this document, as it necessarily would if it were properly before it, we think the appellant's rights were thereby prejudiced, and that reversible error was committed in admitting and giving probative effect to Exhibit A.

The judgment of the United States Customs Court is *reversed* and the cause is *remanded* for a new trial.