Application of the **UNITED STATES** of America
and
**Oscar Mintzer, Petitioners,**

v.

**Frieda GOLDSMITH, Respondent.**

United States District Court
E. D. New York.
June 13, 1967.

---

25. TR. April 20, 1967.

26. The jury found a conspiracy among all named defendants.

Joseph P. Hoey, U. S. Atty., Eastern Dist. of New York, for petitioners, Daniel A. Rago, Asst. U. S. Atty., of counsel.

Davis & Davis, New York City, for respondent, Harold Davis, New York City, of counsel.

ROSLING, District Judge.

The circumstantial context in which the motion is made, the relief sought, the objections interposed and the threshold problems are sufficiently set out in the interim memorandums filed by the Court on March 29 and April 17, 1967, so that no repetition except, possibly, tangential reference required to maintain continuity of discussion will here be made.

■■ A principle of general application accords the privilege against self-incrimination to all who claim it in *"any proceeding,* be it criminal or civil, administrative or judicial, investigatory or adjudicatory * * * it protects *any disclosures* which the witness may reasonably apprehend *could be used in a criminal prosecution or which could lead to other evidence that might be so used."* The excerpt is from Murphy v. Waterfront Commission (1964), 378 U.S. 52 at 94, 84 S.Ct. 1594, 12 L.Ed.2d 678, the italics being added to indicate where Justice Fortas, delivering the opinion for the Court in Matter of Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527, decided by the Supreme Court May 15, 1967, felt it necessary to emphasize by italics. *Gault* is a landmark case which deals with the right of children charged as delinquents to exercise and enjoy the rights of adults accused of adult crime. The high court was close to unanimity in its assertion that labeling a proceeding "civil" will not justify placing those proceeded against or involved in it as witnesses beyond the pale of constitutional protection. Thus, in *Gault,* the Court declares (87 S.Ct. p. 1455):

> "It would be entirely unrealistic to carve out of the Fifth Amendment all statements by juveniles on the ground

that these cannot lead to 'criminal' involvement. \* \* \* To hold otherwise would be to disregard substance because of the feeble enticement of the 'civil' label-of-convenience which has been attached to juvenile proceedings."

■ The right of the witness to claim the privilege, therefore, may not be diluted by denominating the Internal Revenue Service inquisition a civil proceeding; indeed, the department here recognized the force of such principle, for the second question put to respondent, Mrs. Goldsmith, by Mr. Sheffield, the "Special Procedure Advisor", [Special Agent] was the formulary, "In accordance with the rights guaranteed you by the Constitution of the United States, you are not required to answer or testify concerning any matter that may incriminate or degrade you, you understand that?"

That respondent did not assert a 5th Amendment immunity in the course of her interrogation is clear. She was represented at the hearing by her present attorney and the procedure they adopted with respect to the questions which are the subject of the government's motion to compel answer, was that the attorney would signal when the question was put to the client, by uttering the single word "objection." Thereupon Mrs. Goldsmith would announce without other particularization, with only immaterial variations, "I refuse to answer on advice of counsel."

When the questioning had concluded the attorney introduced into evidence without explanation as to his reason for so doing the two letters, both dated March 2, 1966, addressed by him to the Internal Revenue Service, copies of which, marked Exhibits A and B, are annexed to respondent's "Affidavit and Memorandum of Law, in Opposition" to the government's motion sub jud. The letters do not make claim of 5th Amendment privilege.

The letter in Frieda Goldsmith's behalf declares that the attorney-author "would not permit her to be examined as to 'tax liability' [of her husband] [1] and that she would not comply with the demand for submission of records to complete *her* financial statement; she is not the taxpayer involved." The letter then incorporates by reference the comments made in the Louise Goldsmith companion letter. Louise's letter deals with the terms upon which the attorney is prepared to produce Louise in response to the summons the Internal Revenue Service served upon her. She is the wife of Nathan Goldsmith, brother of Frieda's husband, who is also the subject of investigation as a delinquent taxpayer. His difficulty arises out of a business in which the two brothers had jointly engaged. The Louise letter proposes to submit her "to give testimony in relation to the collection of the taxes of Nathan Goldsmith for any periods not outlawed by the statute of limitations."

■ Reiterating in the case of Louise the refusal by Frieda to produce records in connection with her own financial statement, the Louise letter continues with a contention that the government's "collection procedures have been barred by the statute of limitations under the [applicable] 1939 Revenue Act. If you have any extensions or waivers of the statute of limitations in respect of collection procedures, I would appreciate your arranging to allow me to inspect same before any examination of witnesses takes place." [2]

---

1. The "tax liability" referred to in the letter was not that of the respondent, but rather that of her husband Isidor. The summons to Frieda is captioned "In the matter of the tax liability of Isidor Goldsmith". The complete clause of which the quoted phrase forms a part reads, "collection of the tax liability of the above named person."

2. The respondent's contention, more completely stated, is that the collection procedures were being taken against her as a transferee of her husband's assets, and that the period for the taking of such proceedings had expired. The discussion is relegated to this footnote inasmuch as it embraces an issue not material to the determination of this motion. The point

The appended footnote 2 demonstrates the untenability of the claimed expiry of the statute of limitations for transferee assessment as justifying respondent's refusal to answer questions soliciting information concerning her husband's assets and what had become of them.

But the reach of the summons served by the department goes far beyond an inquiry into whether the taxpayer has transferred assets to his spouse that in equity would be made available to the government for the satisfaction of the husband's debt to the fisc. For if respondent has knowledge of the place of hiding of untransferred cash or property belonging to Isador, or if such assets had been given to her without intent to change title, but merely to conceal on her person or elsewhere, it is manifest she would have been required to make disclosure. For her contumacious failure to do so she would face severe criminal penalties.[3]

The government, citing respondent's failure to raise the claim of 5th Amendment immunity at the hearing before the Administrative Examiner, argues that such omission operates as a waiver, the effect of which she cannot now avert, although her papers presently interpose such claim. The government's argument is not persuasive.

The government, by abandoning its earlier attempt to move directly to punish respondent for contempt in refusing to answer before the Examiner[4] and in applying for a preliminary direction by order to compel obedience to the mandate of the summons, i. e. to answer the unanswered questions, acknowledges that on the state of the record made at the departmental inquiry the initial refusal

is sketchily briefed by respondent in the memorandum of law annexed to the opposing affidavit, the opening sentence of which delimits the controversy. It reads:

"Where assessment of taxes against the transferor has actually been made by the Commissioner, the six year (plus one year) period of limitations provided in 26 U.S.C.A. § 6901(c)(1) bars assessment against the transferee."

The government's memorandum of law counters factually by submitting a schedule showing an original assessment against the taxpayer-husband on December 23, 1954, and various extensions either by express waiver or by the tolling effect of proceedings in relation to offers in compromise. Based on these an allegation is made, seemingly correct, that the period of limitation on collection of the taxpayer's assessed liability will not expire until on or about June 21, 1970.

The extension and suspension of the period for collection operates with like effect in continuing a transferee's liability. 26 U.S.C. § 6901(a). United States v. City of New York, 134 F.Supp. 374 (S.D.N.Y.1955); Dardi v. United States, 252 F.2d 670 (9th Cir. 1958); Gatto v. C.I.R., 20 T.C. 830 (1953); Rite-Way Products, Inc. v. C.I.R., 12 T.C. 475 (1949). Cf. United States v. Vassallo, Inc., 274 F.2d 791 (3d Cir. 1960).

The statutory transferee provisions, however, are not exclusive in the remedies they afford the government "for enforcing a tax liability against a transferee of the taxpayer's assets. They simply provide a new summary procedure. * * * When the circumstances of the case so require, the Commissioner may still bring a suit against transferees under the trust fund doctrine.

"The formal assessment of a deficiency against a transferee of assets is not a condition precedent to suit under the trust fund theory." 9 Mertens (Zimet Revision) Law of Federal Income Taxation, § 53.04, citing cases.

See as illustrative and in point Ochs v. United States, 305 F.2d 844, 848, 158 Ct.Cl. 115 (1962), cert. denied, 372 U.S. 968, 83 S.Ct. 1093, 10 L.Ed.2d 131; Leighton v. United States, 289 U.S. 506, 53 S.Ct. 719, 77 L.Ed. 1350 (1933); Rosenberg v. McLaughlin, 66 F.2d 271 (9th Cir. 1933), cert. denied, 290 U.S. 696, 54 S.Ct. 132, 78 L.Ed. 599; United States v. Prince, 120 F.Supp. 563, 565 (S.D.N.Y.1954).

3. E.g. 26 U.S.C. [1954] § 7201—Attempt to evade or defeat tax; § 7203—Willful failure to * * * supply information * * *; § 7206(4) Removal or concealment [of property subject to levy for taxes] with intent to defraud, etc., and corresponding provisions of the 1939 Revenue Act.

4. See the Court's memorandum filed March 29, 1967, p. 4 and fn. 7 p. 11 for details.

of respondent was not contumacious. Such procedure opens up to respondent the opportunity here to claim the 5th Amendment immunity. See Reisman v. Caplin, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964); United States v. Murdock, 284 U.S. 141, 147–149, 52 S.Ct. 63, 76 L.Ed. 210 (1931). Cf. Brody v. United States, 243 F.2d 378 (1st Cir. 1957), cert. denied, 354 U.S. 923, 77 S.Ct. 1384, 1 L.Ed.2d 1438.

 No extended exposition is required at this late date to state the broad principles to be applied in according to the one who raises the claim of such privilege a protection as broad as the amendment contemplates. And it surely does not contemplate that the immunity shall be rendered nugatory by compelling answers to questions intended to test good faith to the point where disclosure of the crime establishes a right to withhold such disclosure. (See Hoffman v. United States, 341 U.S. 479, 486, 71 S. Ct. 814, 818, 95 L.Ed. 1118 (1951); Malloy v. Hogan, 378 U.S. 1, 11–12, 84 S.Ct. 1489, 1495, 12 L.Ed.2d 653 (1964); United States v. Trock, 232 F.2d 839 (2d Cir. 1956), reversed, 351 U.S. 976, 76 S.Ct. 1048, 100 L.Ed. 1493 (1956).

 Here the inquiry was directed by the Examiner toward ascertaining (a) what assets the taxpayer had, and (b) what property he had turned over to others including his wife, which might be recoverable in equity for application against his tax debt. In such investigation the scope of permissible inquiry of persons other than the taxpayer is of great latitude. When the person questioned is so closely involved in the taxpayer's activities and financial dispositions as is a wife with whom he shares his home and earnings, a close scrutiny by the government of her affairs is not so irrelevant to the collection of the husband's tax as to constitute the inquiry unduly oppressive. Once, however, it is established that the wife's assets are derived from persons other than the taxpayer-husband, what she has and how she acquired it are not any concern of the government's upon an inquiry justifiable only as one directed toward uncovering the taxpayer's assets still possessed by him or earlier transferred in derogation of the sovereign's rights.

With this preamble we turn to an analysis of the first of the unanswered questions, and the interrogation immediately preceding which provided it with an incriminatory context. Mrs. Goldsmith had testified, responsively, (questions 6 through 14,) that she had purchased the cooperative apartment in which she then lived, for about $3,000. The ensuing interrogation proceeds as follows:

"15. Q. Did your husband give you any of the $3,000.00 you invested in that apartment?

A. No.

16. Q. Where did that $3,000.00 come from?

Mr. Davis (respondent's attorney) *Objection.*"

Question 16 remained unanswered. The order sought is directed toward compelling its answer.

 The possible incriminatory linkage of the information that question 16 sought to elicit is at once apparent. The special agent surely was not interested in an answer that would establish the *truthfulness* of the answer "no" given by respondent to question 15, for if he were to concede that she had *not* received that money from her husband, the extraneous source of the money would not be subject to his further inquiry. The 16th question has pertinency only if the interrogator reasonably believed he could by continuing inquiry prove, what he would like to see established, namely, that the witness had already perjured herself when she excluded her husband as the source of the money. And, what is more, that perjury might well have an enhanced force should the government essay to plait it into a web of circumstance enmeshing the wife as a felonious abettor of her husband in the concealment of assets and as a suppressor of information which she was by law re-

quired to disclose. (See infra, p. 13, fn. 3).

With the interrogation through the 16th question providing a minatory frame of reference for respondent in assessing her position as one of jeopardy, the remaining six unanswered questions which followed this first refusal fall into a pattern of possible incrimination. The Court cannot now fairly hold that respondent's apprehension of possible criminal involvement, should she supply the information demanded of her, is without a substantial basis. Respondent, accordingly, need not by reason of 5th Amendment immunity answer the questions that have been objected to. These are questions 16, 19, 21, 27, 29 and 31.

As for the troubling problem of spousal privilege, resolved only in part by Hawkins v. United States, 358 U.S. 74, 79 S.Ct. 136, 3 L.Ed.2d 125 (1958),[5] this Court, in the absence of statistical and precedential information from the movant which it solicited but did not receive, set the matter down for hearing at which the data might be supplied in testimonial form by representatives of the Service. Hawkins had declared, 358 U.S. at p. 78, 79 S.Ct. at p. 138, that "Congress or this Court, by decision or under its rule-making power * * * can change or modify the [exclusionary] rule where circumstances or further experience dic-

tates." It was hoped by this Court that at the hearing here directed departmental practice in conducting its hearings would be shown to have existed so long and so widely without claim of spousal privilege or that the contrary might be the case so as to provide the circumstantial or experimental base that Hawkins speaks of as necessary for the moulding of the rule of privilege. Hawkins, had cited Stein v. Bowman, 13 Pet. 209, 10 L.Ed. 129 (1839) a civil case in which the anti-spousal exclusion was upheld, but Hawkins itself dealt with the narrower problem of a wife's being called by the government to testify against her husband in a criminal prosecution.

■ The testimony elicited, however, at the hearing directed by this Court was inconclusive and of doubtful precedential value. Under the circumstances the Court will not venture into the grey area between the limits marked out by Hawkins and the farther boundaries of Bowman. The proceedings initiated by the summons are, until more is shown, essentially civil in nature [6] and until what the questions put thereat trench upon what appears to be the maritally confidential and inculpatory so far as the husband is concerned, the claim of spousal privilege will be held unavailable to silence the other spouse.

Settle order on notice.

5. See memorandums of this Court for statement and discussion of the problem.

6. Wild v. United States, 362 F.2d 206, 209 (9th Cir. 1966); In re Magnus, Mabee & Reynard, Inc., 311 F.2d 12, 16 (2d Cir. 1962), cert. denied; 373 U.S. 902, 83 S.Ct. 1289, 10 L.Ed.2d 198; Falsone v. United States, 205 F.2d 734 (5th Cir. 1953), cert. denied, 346 U.S. 864, 74 S. Ct. 103, 98 L.Ed. 375. Cf. Baird v. Koerner, 279 F.2d 623, 628, 95 A.L.R.2d 303 (9th Cir. 1960) and contra as to whether States v. Federal law governs; Colton v. United States, 306 F.2d 633, 636 (2d Cir. 1962), cert. denied, 371 U. S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499.

Cf. In re Albert Lindley Lee Memorial Hospital, 209 F.2d 122 (2d Cir. 1953), cert. denied, Cincotta v. United States, 347 U.S. 960, 74 S.Ct. 709, 98 L.Ed. 1104; Smith v. United States, 250 F.

Supp. 803, 806 (D.N.J.1966) and United States v. Bowman, 236 F.Supp. 548, 550 (M.D.Pa.1964), aff'd, 358 F.2d 421 (3d Cir. 1966). The Court of Appeals in Bowman omitted specific reference to the question which here concerns us, but approved the lower court's view by its comment that "[o]ther points raised on this appeal are adequately disposed of by the opinion of the court below." The district court had held that investigations by Federal administrative agencies, in which category the subject proceedings are to be classified, are not judicial proceedings and are not, therefore, restricted by rules of evidence applicable in courts of law. We do not construe this, however, as meaning that the privilege against self-incrimination is withdrawn by one subjected to inculpatory interrogation upon such administrative inquiry.