## HARRIET E. COCHRANE vs. ABRAHAM LIBBY.

Where the demandant claimed dower in a tract of land whereof her late husband was in possession, and on which one of his creditors levied an execution as his property during the coverture, and where the tenant showed no title but under such levy; *it was held*, that there was sufficient evidence of a seizin in fee in the husband to maintain the action.

Reputation in the family of the death of the husband, is *prima facie* evidence of the fact in an action for dower.

In such action, if adultery of the demandant be relied upon as a bar to her claim, the tenant is bound to prove the fact affirmatively.

Proof of the second marriage of the demandant within three years of the time of his leaving home, but after there was a reputation in the family of the death of her husband, without showing that he was then alive, does not furnish sufficient evidence that she was guilty of adultery.

THE demandant claimed dower in about ten acres of land in *Westbrook*, as widow of *Joshua Thoms*, formerly her husband. The demandant was married to *Thoms, September* 17, 1820. On the last of *December*, 1830, she was married to *James Cochrane*. *Noah Harding* and *Jonathan Morgan* levied their respective executions upon the demanded premises, then in the possession of *Joshua Thoms*, as his property, on *June* 21, 1827, and the tenant claims under these levies. The demandant offered no other evidence to prove a seizin in *Thoms*, and the tenant showed no title but under these levies. *Joshua Thoms* left this part of the country in the beginning of the year 1828, and there was much testimony introduced by the respective parties, all of which was set forth in the report of the case, from which the demandant contended, that she had proved the death of *Thoms* to have taken place long before her second marriage, and from which the tenant inferred, that *Thoms* was still alive, or that the balance of evidence was in support of his inference, and at all events, that he was alive when the second marriage took place. The character of this evidence will sufficiently appear in the instructions to the jury, by EMERY J., who presided at the trial.

The counsel for the tenant contended, at the jury trial, that there was no legal evidence that *Joshua Thoms* was seized of the demanded premises during the coverture, so as to entitle the de-

mandant to dower. The Judge instructed the jury, that there was legal and sufficient evidence of such seizin.

The tenant's counsel also contended, that there was no evidence of the death of *Joshua Thoms*. On this point, the Judge intructed the jury, that it was a question of fact purely, for them to determine. The burthen of proof was on the plaintiff, to give the jury reasonable satisfaction that the said *Joshua* was dead. If she had failed to do it, their verdict must be for the defendant. That the presumption in favor of his being alive, remains, unless from circumstances and evidence a contrary presumption arises; that they would consider his character, health, habits, and intentions, when he left, as made known in evidence; that he was bound, as he professed, south, among strangers; that, after being absent twice before, he had returned; *that he said he meant to* change his name; that in the fall after he went away, which was in *February* or *March*, a report existed of his death; that in the family he was reputed to be dead; that he was much attached to his children, promised to send aid to them, promised both his brothers to write to them, to one if he lived; that no letter or message from him has been received by any of the family. That the circumstances testified by *Mrs. Paine*, *Mrs. Osgood* and *Benjamin Thoms*, if believed, the length of time which has elapsed, was all together *prima facie* evidence to raise a presumption of his death. It is liable to be repelled; and they would consider how far it is so, or affected by the testimony of *Nathaniel Thoms*, another brother. The law does not require, that some person is to be produced, to swear, that he or she saw the said *Joshua Thoms* die, or saw him dead.

It was also contended by the tenant, that there was no evidence of the death of *Joshua Thoms* when the demandant married *Cochrane*, and that by marrying him, as she did, it was an act of adultery on her part, whereby she forfeited all right of dower in *Thoms'* estate, if she ever had any. On this point, the Judge instructed the jury, that unless they were satisfied, from the evidence, that said *Joshua* was dead before the plaintiff married *Cochrane*, she certainly had committed adultery by that act; that by the ancient common law, neither adultery nor elopement were a bar to the claim to dower. Elopement is, where a married

woman departs from her husband, and dwells with an adulterer, provided she does so voluntarily ; and for this, without reconcilement to the husband, she will lose her dower; that this was the provision of the statute of *Westminster* 2*d,* c. 34, which was now the law in this State. There could be no pretence of reconciliation in this case, for the husband had never returned since the second marriage. It was anciently holden, that if the relatives of the husband keep him from his wife, so that she does not know what has become of him, and give out that he is dead, and thereupon procure her to release all marriages and interest which she can have in him as her husband, and also persuade her to marry again, which she does, with one who has notice that her first husband is alive, but she herself has no notice of it, though she live in adultery with this man, and though her husband be not out of the realm or beyond the seas, yet because she did not leave her husband voluntarily, as the statute says, but by persuasion of his friends, not knowing of herself but that he was dead, this is no such elopement as will bar her of her dower. The Judge further instructed the jury, that if they were satisfied, that the report of the said *Joshua's* death was previous to the second marriage, fairly made to the friends and connections, and not fabricated for the occasion, but honestly by her and the family believed to be true at the time of said second marriage, the plaintiff could not be considered as having eloped with the adulterer, and would not, by that circumstance alone, forfeit her dower ; but that the jury must be satisfied of his death before a verdict could be rendered for the plaintiff; and that the law considered the claim to dower was a favored claim.

The jury returned a verdict for the demandant, which was to be set aside, if the instructions were erroneous.

*Longfellow, Sen.*, for the tenant, argued in support of the propositions contended for at the jury trial, and cited *Stearns on Real Actions,* 279 ; 1 *Phil. Ev.* 152 ; 6 *Bingham,* 135.

*Preble,* for the demandant.

The opinion of the Court was drawn up by

WESTON C. J. — The case finds the husband to have been in possession of the land, wherein the demandant claims dower. Certain of his creditors levied upon it as an estate in fee ; and such an

estate is now claimed by the tenant, under a title depending upon these levies. In the absence of any conflicting proof, we regard this, as against the tenant, evidence of a seizin in fee of the husband.

The jury have found the death of the husband from competent proof. Reputation, in the family, of his death, is evidence of the fact, *prima facie.* The second marriage of the demandant is relied upon, as evidence of adultery. If this is a bar to her claim, and set up as such, the tenant is bound to prove the fact affirmatively. This he has not done. The second marriage was after there was a reputation, in the family, of the death of the first husband. As the jury have found this fact, her subsequent connection was not adulterous, but lawful.

*Judgment on the verdict.*