# GENERAL TERM, 1890.

## GEO. W. HURLBURT *v.* WAIT HURLBURT'S EST.

*Evidence. Practice. Harmless Error. Death of party not heard from. Exception to deposition.*

1.  To offer inadmissible testimony is no error, when the testimony itself turns out to be in favor of the excepting party.
2.  When the court allows a party to impeach his own witness because the witness's "testimony is adverse," that is tantamount to a finding by the court that the witness himself is adverse within No. 49, Acts 1886.
3.  The question being, whether a person who had disappeared and not been heard from, was dead at a certain time, a letter, addressed to that person at the place where he had been accustomed to receive letters, which had been returned to the writer as not called for, is admissible.
4.  A detective, employed to investigate the disappearance of such person, cannot state, as bearing upon the question, whether he was at a certain time dead or alive, what persons, who last saw the missing man, said to him.
5.  When a party excepts "to the substance" of a deposition, some portion of which is admissible, the exception is not available; for the one excepting should point out the particular thing excepted to.

This was an appeal from a decree of the Probate Court for the district of Chittenden. Trial by jury at the April term, 1889, Chittenden county, Powers, J., presiding.

Verdict for the appellant.

The Probate Court decreed distribution of the estate of Wait Hurlburt to his three children, George W. Hurlburt, Mrs.

Mary Truell and Edmund W. Hurlburt. Wait Hurlburt died December 14, 1884, in said district. The appellant claimed that Edmund W. Hurlburt died without issue before his father, and that therefore no distributive share should have been decreed to him. The only question was whether Edmund W. died before his father.

It appeared that the said Edmund W. went to Dakota some time in 1881, and continued to reside at Grand Forks, leading a somewhat dissipated life, until about August 25, 1884, when he disappeared, and had not been heard from since. The plaintiff's evidence further tended to show that after going to Dakota he corresponded with his father, receiving and answering letters frequently up to the time of his disappearance. The appellant then offered in evidence an envelope containing a letter dated September 29, 1884, in the hand-writing of Wait Hurlburt, addressed to Edmund W. Hurlburt at Grand Forks, Dakota, with the writer's name printed on one corner, accompanied by the request to return after ten days if not called for, and having on it a postoffice stamp as having been returned to the writer unclaimed. The defendant objected and excepted to the admission of this evidence.

The appellant introduced one Churchill as a witness, who went to Dakota with Edmund, and remained there until after his disappearance, and offered to show by him that after such disappearance there was a general reputation in the locality that said Edmund W. was dead. The defendant objected to the admission of this testimony, and the court overruled the objection. The witness, being permitted to answer, testified that the general reputation after said disappearance was that Edmund W. was alive.

The appellant, thereupon, introduced evidence under which the court held "the witness's testimony was adverse within the meaning of the Act of Nov. 9, 1886, relating to the impeachment of adverse witnesses," and permitted the appellant to show contrary statements of said Churchill made at other times.

It appeared that one Wood had been employed as a detective for the purpose of looking up the whereabouts of the said Edmund W., and had gone to Grand Forks for that purpose, and made many inquiries among the persons who last saw said Edmund W. before his disappearance. This witness was permitted to state, against the exception of the defendant, what was said to him in answer to these inquiries.

*A. V. Spaulding, W. P. Dillingham,* and *J. J. Monahan,* for the defendant.

The detective Wood was improperly allowed to state what was said to him by persons of whom he inquired as to the disappearance of Hurlburt. It was merely heresay. *Davis* v. *Fuller,* 12 Vt. 178; *Churchill* v. *Smith,* 16 Vt. 560; *Law* v. *Fairfield,* 46 Vt. 425; *Gates* v. *Moore,* 51 Vt. 222; *Gaines* v. *Rolf,* 12 How. 472; *Hopt* v. *Utah,* 110 U. S. 574; *Fitch* v. *Chapman,* 10 Conn. 8; Greenl. Ev. ss. 103, 104; *Carter* v. *Buchanan,* 9 Geo. 539; *Everingham* v. *Messroom,* 2 Brev. (S. C.) 461-2; *Gilcrist* v. *Martin and West,* 1 Bailey Eq. (S. C.) 492; *Winter* v. *United States,* 1 Hemps. 347-348; *Queen and Child* v. *Hepburn,* 7 Cranch 296; *Page* v. *Parker,* 40 N. H. 47; *Deming* v. *Walker,* 1 N. J. 33.

*Henry Ballard* and *W. L. Burnap,* for the appellant.

It was proper to show the reputation as to the death of Hurlburt. Lawson Pre. Ev. Rule 40, 197; *Mason* v. *Fuller,* 45 Vt. 29; *Poultney* v. *Glover,* 23 Vt. 328; *Read* v. *Murphey,* 37 Vt. 99.

A general objection cannot be taken to the admission of a deposition of which some parts are admissible. *Black* v. *Lamb,* 12 N. J. Eq. 108; *Webb* v. *Richardson,* 42 Vt. 470; *Valentine* v. *Middlesex R. R. Co.,* 137 Mass. 28.

The opinion of the court was delivered by

ROWELL, J. It is immaterial whether the offer of testimony from the witness Churchill was too broad or not, for his testimony itself was entirely in defendant's favor. It is not the offer that vitiates, but the improper testimony obtained under it.

The court's allowing the party calling the witness to impeach him by showing that he had made statements inconsistent with his testimony, is criticised, for that the court did not think the witness adverse, but only his testimony. But the court held the " witness's testimony " adverse " within the meaning of the statute relating to the impeachment of adverse witnesses." The fair meaning of this is, that the court regarded the witness himself adverse and not his testimony merely.

Besides the presumption of death arising from unexplained absence for seven years, courts hold that certain other facts afford ground on which an inference of death more or less strong may be based; and one is, the cessation of communication with friends by letter. 2 Whart. Ev. §1277. The admission of the returned letter came within this rule, and was proper.

Defendant objected " to the substance " of French's deposition, but pointed out no part of it as objectionable. This objection was too general, as a portion of the deposition was clearly admissible. In such case the court is not bound, on a general objection like this, to look into the deposition further, certainly, than to see that some of it is admissible ; but it is the duty of counsel to point out what they object to, and to state the ground and reason of their objection, that the court may know precisely what it is asked to rule upon. *Webb* v. *Richardson,* 42 Vt. 465.

We think that the testimony of the detective as to what the gambler and the bridgeman told him was inadmissible as being heresay.

When the question is whether a person acted prudently, wisely, or in good faith, the information on which he acted, whether true or false, is original and material evidence. 1 Greenl.

Ev. §101. This is often illustrated in actions for malicious prosecution, and in cases of agency and of trusts.

So when the question is whether one has acted with the requisite diligence, the information on which he acted may be shown. Thus, the question being whether an officer made due search to find a defendant to attach his body, it was held admissible to show what inquiries he made and what answers he received and that he searched accordingly. *Phelps* v. *Foot*, 1 Conn. 387.

So the statements of third persons may be received to show why certain action was taken, when the reason for the action is the thing to be proved. Thus, the question being why the witness refused a compromise proffered by the defendant and sued to collect his debt, it was held admissible to show that he did it because a correspondent wrote him that he believed the defendant could pay. *Lewis* v. *Manly*, 2 Yeates (Pa.) 200.

And Bacon says that speeches and discourses may be made use of by way of inducement or illustration of what is properly evidence. Abridgment, Evidence (K.) · Thus, in *Morris* v. *Lessee of Harmer's Heirs*, 7 Pet. 554, a witness said he had heard Z "speak of the situation of the lots" in question; and this, being inconsequential, was treated as merely the introductory language of the witness.

But the statements under consideration do not come under any of these heads. They were used as the foundation of the search, and to give it added weight as evidence tending to show death at the time of disappearance, which they could not do except upon the ground and theory that they were true in point of fact. And we think that what the court said when they were admitted left the jury at liberty to act upon them as true if they believed them; for although the court said at first that they were not received as evidence of their truth, yet it also said that any facts relating to disappearance might be shown by reputation, and that the jury would have to

weigh them for what they were worth, and on the whole say whether the man was dead or not.

But without this, the question being whether dead or not, it was error to allow the witness to relate the story of his search based upon statements not proved nor admitted to be true. This was misleading and liable to result in a wrong finding. The truth of those statements, upon which the value of the search depended, should have been shown by proper evidence, and then those facts would have given legitimate weight to the search based upon them. But the statements themselves could not do this, nor show whether the search was intelligent or diligent, valuable or worthless, unless their truth was assumed.

*Judgment reversed and cause remanded.*