IN RE WAIT HURLBURT'S ESTATE,

GEORGE W. HURLBURT, APT.

JANUARY TERM, 1895.

*Reputation in family as to death of member.    Charge of Court.*

1.  The question being whether a son, who disappeared Aug. 25, 1884, and was never subsequently heard from, died before his father, whose death occurred Dec. 14, 1884, *held*, that the testimony of living members of the family as to the general reputation in the family as to the son's death, not predicated upon the declarations of any deceased member of the family, was inadmissible.

2.  That it was generally reputed among the son's friends and acquaintances, that he was killed or drowned, and that such was still the reputation, would be inadmissible.

3.  Ordinarily that declarations may be admissible in evidence, they must be those of a deceased person, and made before the controversy arose.

4.  It is a sufficient compliance with the requests of a party, if the court correctly charges upon the law as applied to the testimony.

5.  *Hurlburt* v. *Hurlburt*, 63 Vt. 667, affirmed.

Appeal from a decree of the probate co··· for the district of Chittenden.    Trial by jury at the Sc;·.e.nber term, 1893, Chittenden county, MUNSON, J., presiding.    The jury returned a special verdict that Edmund W. Hurlburt was alive at the death of his father.    Judgment and verdict for the appellee.    The appellant excepts.

*W. L. Burnap* and *Henry Ballard* for the appellant.

The fact of the death may be proved by reputation and hearsay. *Brown* v. *Sim*, 4 Whar. 150; Broon, Leg. Max. 965; Rice, Ev. 416-19; *Doe* v. *Griffin*, 15 East. 293; *Webb* v. *Richardson*, 42 Vt. 465; *Mason* v. *Fuller*, 45 Vt. 29; *Hammond* v. *Noble*, 57 Vt. 203; *Clark* v. *Owens*, 18 N. Y. 434; *Cushing* v. *Libby*, 18 Me. 39; *Bailey* v. *Bailey*, 36 Mich, 182; *Hancock Life Ins. Co.* v. *Moore*, 34 Mich. 41; *Dowd* v. *Watson*, 105 N. C. 476; *Jackson* v. *Etz*, 5 Cowan, 314; *Jackson* v. *Boneham*, 15 Johns. 226; *Skeel* v. *Eidman*, 77 Ill. 301; *Ewing* v. *Savary*, 3 Bibb 235.

*Dillingham, Huse & Howland* for the defendant.

In order that hearsay testimony may be admissible in any case it must be of the declarations of deceased persons, having special means of knowledge when in life. *Queen and Child* v. *Hepburn*, 7 Cranch 296; Greenleaf Ev. s. 103; *Ellicot* v. *Pearl*, 10 Pet. 435; Phillips Ev. 248; *Stegall* v. *Stegall*, 2 Brock. 263; *Eisenlord* v. *Clum*, 126 N. Y. 552; *Monkton* v. *Attorney-General*, 2 Russ & M., 157; *Northrop* v. *Hale*, 76 Me. 311.

Mere reputation is not admissible to prove death. *Stein* v. *Bowman*, 13 Peters 220; *Carnes* v. *Crandall*, 10 Iowa, 377; *DeHaven* v. *DeHaven*, 77 Ind. 263; *Waldron* v. *Tuttle*, 4 N. H. 378; *Emerson* v. *White*, 29 N. H. 490; *Ann Haddock* v. *B. & M. Rd.*, 3 Allen 299.

But suppose reputation to be competent for that purpose, something more is meant by that term than mere belief or opinion in the family. *Stein* v. *Bowman*, 13 Peters 220; *Haddock* v. *B. & M. Rd.*, 3 Allen 299; Phillips, Ev. 248.

The reputation must be of long standing. *Shields* v. *Boucher*, 1 DeG. & Sm. 40; Phillips, Ev. 248; *Strickland* v. *Pool*, 1 Del. 18.

It must have been formed *ante litem motam*. *Whitelock* v. *Baker*, 13 Ves. 511; *Berkley Peerage Case*, 4 Camp. 409; *Monkton* v. *Attorney-General*, 2 Russ. & M. 157;

*Northrop* v. *Hale*, 76 Me. 311; *Strickland* v. *Pool*, 1 Del. 18.

THOMPSON, J.   The issue was whether Edmund W. Hurlburt was dead, and if dead, whether he died before his father, Wait Hulburt, did, which was on Dec. 14, 1884. It appeared that Edmund went to Devil's Lake, Dakota, some time in 1882 and continued to reside there and at Grand Forks, Dakota, living a rather reckless and dissipated life, till about Aug. 25, 1884, when he disappeared from Grand Forks, and has not been seen or heard of since. As tending to prove that he was dead, and that he died before his father did, the appellant offered to show by the mother and sister of Edmund, residents of Chittenden county, Vt., and his brother, George W. Hurlburt, the appellant in this case and a resident of Massachusetts, the general reputation in the family as to Edmund's death, not claiming that such reputation was derived from the declarations of any deceased member of the family.   The offer was excluded.

In cases of pedigree, both in this country and in England, the declarations of deceased members of the family, made *ante litem motam*, before there was anything to throw doubt upon them, are admissible to prove pedigree.   Such declarations are received as original evidence, and upon the ground of the interest of the declarants in the person from whom the descent is made out, and their consequent interest in knowing the connections of the family.   The rule of admission is restricted to the declarations of deceased persons, who were related by blood or marriage to the person, and therefore interested in the succession in question.   The term *pedigree* embraces not only descent and relationship, but also the facts of birth, marriage, and death, and the times when these events occurred.   1 Greenleaf Ev. s. 104; *Stein* v. *Bowman*, 13 Pet. 220, 10 Book Law ed., 129.   In England the rule is limited strictly to cases involving pedigree and does not ap-

ply to proof of the facts which go to make up pedigree, such as birth, death and marriage, when they have to be proved for other purposes. *Haines* v. *Guthrie*, L. R. 13 Q. B. 818. But in this state. and generally in this country, we think, the rule goes further, and you may prove these facts in that manner in any case where they become material.

Counsel for appellant contend that in cases of pedigree, death may be proved by general reputation in the family, without regard to the source from which such reputation had its origin, or the time when it came into existence. They say that reputation as used in this connection means "opinion" or "established opinion," or "the opinion generally entertained" and that it is more limited in its scope than hearsay evidence, and while it may be the result of the latter, it is not necessarily dependent upon it and may exist without it.

It would be useless to attempt to reconcile the utterances of the various courts that have spoken directly or indirectly upon this subject. Counsel upon both sides have collected quite a number of cases bearing upon it, and there are still others germane to it, to which they do not refer. Upon careful examination, much that is said in many of them upon this subject, will be found to be wholly *obiter dictum*. Some of the cases on account of the alleged peculiar exigencies of those cases, substantially adopt the doctrine for which the appellant contends. In some instances the difference in the holding of various courts on this subject, has arisen from their not giving the phrase, family reputation, the same meaning when applied to matters of pedigree. Some American cases have held this kind of evidence admissible on the authority of 1 Greenl. Ev. (12th ed.), s. 103, where it is said, "general repute in the family, proved by the testimony of a surviving member of it has been considered as falling within the rule," admitting hearsay evidence in cases of pedigree. If by "general repute in the family," Greenleaf means general opinion or belief, however acquired, in the edition of his work on evidence to which we

refer, he cites only one case that can be claimed to support the text on this point. That is *Doe* v. *Griffin*, 15 East. 293, which was an action of ejectment. The question arose whether Thomas Griffin, a younger brother of the person last seized, through whom both the lessor of the plaintiff and the defendant were to make title, if at all, had died without issue, which was incumbent upon the lessor of the plaintiff to show before he could entitle himself to recover upon the general merits of the case. For this purpose Mrs. Jeffries, an elderly lady, one of the family, had been called to prove that Thomas had many years before, when a young man, gone abroad, and, according to the repute of the family, had afterwards died in the West Indies, and that she had never heard in the family of his having been married. The defendant moved for a new trial on the ground that this was not sufficient evidence for the lessor of the plaintiff, on whom the affirmative proof lay, that Thomas in fact died unmarried and without lawful issue. The entire opinion of the court, delivered by Lord Ellenborough, C. J., is as follows:

"The evidence was sufficient to call upon the defendant to give *prima facie* evidence at least that Thomas was married; for what other evidence could the lessor be expected to produce that Thomas was not married than that none of his family had ever heard that he was. Per Curiam. Rule refused."

It is evident that no question was made in respect to the death of Thomas. In effect, the witness testified that she, a member of the family, had never learned that he was married. It was not a question of reputation in the nature of an opinion, but a negative was to be established, and the actual knowledge of the witness that she knew of no marriage, tended to prove it. We do not think this case supports so broad a proposition as that laid down by Greenleaf, if by "repute" he means opinion. It is said in 2 Best Ev. (Am. ed. with Wood's notes), *631, that matters of pedigree may be shown by "general repute in family, proved by a surviving member

of it," but no authority is cited to support the statement, nor does it appear in what sense the author uses the word "repute" in this connection.    It is important to ascertain, if we can, what the words "repute in the family" and "reputation" signify when used in respect to pedigree. It will be observed that both Greenleaf and Best speak of family repute as something to be proved by a surviving member of the family, thus impliedly saying that it is something that has come down from deceased members of it, or that was known to them.  In *Hingham* v. *Ridway*, 10 East. \*109, Le Blanc, J., says :

"On inquiring into the truth of the facts which happened a long time ago, the courts have varied from the strict rule of evidence applicable to facts of the same description happening in modern times, because of the difficulty or impossibility by lapse of time of proving those facts in the ordinary way by living witnesses.   On this ground, hearsay and reputation, which latter is no other than the hearsay of those who may be supposed to have been acquainted with the fact handed down from one to another, have been admitted as evidence in particular cases."

This quotation is incorported into 1 Phil. Ev. (ed. with C. H. & E.'s notes), \*248, as a statement of the law in respect to the admissibility of hearsay evidence in cases of pedigree.  In 1 Stark. Ev. 31, it is said :

"Reputation seems to be. no more than hearsay, derived from those who had the means of knowing the fact.   Hence, it is that reputation may exist when those who were best acquainted with the facts are dead, and such reputation and even traditionary declarations, become the best, if not the only means of proof."

In *Goodright* v. *Moss*, Cowper, 591, Lord Mansfield said : "Tradition is sufficient in point of pedigree."    In the Berkley Peerage Case, 4 Campb. 401, Lord Mansfield, C. J., said :

"In cases of general rights which depend upon immemorial usage, living witnesses can only speak of their own knowledge to what has passed in their own time, and to supply the deficiency, the law receives the declarations of persons who are

dead; there, however, the witness is only allowed to speak to what he had heard the dead man say respecting the reputation of the right of way, or common, or the like; a declaration with regard to a particular fact which would support or negative the right, is inadmissible. In matters of pedigrees, it being impossible to prove by living witnesses the relationships of past generations, the declarations of deceased members of the family are admitted; but here, as the reputation must proceed on particular facts, such as marriages, births and the like, from the necessity of the thing, the hearsay of the family as to these particular facts is not excluded."

In *Monkton* v. *Attorney-General*, 2 Russ & Myline 147, Brougham, Ld. Ch., said:

"Another restriction was a good deal pressed, that you cannot mount, as it were, an hearsay upon an hearsay; but that what is given in evidence as hearsay must only be of the first degree, so to speak; in other words, that after connecting A. with the family, it is competent, after his death, to give in evidence declarations made by A. as to what came within his personal knowledge, but not declarations as to what he had heard respecting the family from others. There is no warrant, however, for any such distinction. The declarations tendered in evidence may refer to what the party knew of his own personal knowledge, or, as is much more frequently the case, to what he had heard from others to whom he gave credit; for *they are only adduced as evidence of reputation in the family, and is the only mode in which the tradition in a family can be proved, and the subject matter of that tradition can be perpetuated in testimony.*"

In *Stein* v. *Bowman*, 13 Pet. 209, the court said:

"From necessity, in cases of pedigree, hearsay evidence is admissible. But this rule is limited to members of the family, who may be supposed to have known the relationships which existed in the different branches. The declarations of these individuals, they being dead, may be given in evidence to prove pedigrees; and so is reputation which is hearsay of those who may be supposed to have known the fact, handed down from one to another, evidence. As evidence of this description must vary by the circumstances of each case, it is difficult if not impracticable, to deduce from the books any precise and definite rule on the subject. It is not every state-

ment or tradition in the family that can be admitted in evidence. The tradition must be from persons having such a connection with the party to whom it relates, that it is natural and likely, from their domestic habits, and connections, that they are speaking the truth, and that they could not be mistaken."

In *Haddock* v. *B. & M. Railroad*, 3 Allen. 298, in which general reputation was offered as evidence on a question of pedigree, and excluded, the court in affirming the ruling, said :

"The admission of hearsay to prove pedigree of a person is restricted to the declarations of deceased persons who were related to him by blood or marriage. 1 Greenl. Ev. s. 103, and cases there collected. And 'reputation,' says Le Blanc, J., (10 East. 120) 'is no other than the hearsay of those who may be supposed to have been acquainted with the fact, handed down from one to another.'"

In *Whitlock* v. *Baker*, 13 Ves. Jr. 511, Lord Chancellor Eldon said :

"I accede to the doctrine of Lord Mansfield as it has been stated from Cowper ; but it must be understood, as it has been practiced, and acted upon ; and one word in that passage wants explanation. It was not the opinion of Lord Mansfield or of any judge, that tradition, generally, is evidence even of pedigree ; the tradition must be from persons having such a connection with the party to whom it relates, that it is natural and likely, from their domestic habits and connections that they are speaking the truth and that they could not be mistaken. The whole goes upon that ; declarations in the family, descriptions in wills, descriptions upon monuments, descriptions in Bibles and registry books, are all admitted upon the principle that they are natural effusions of a party, who must know the truth ; and who speaks upon an occasion, when his mind stands in an even position, without temptation to exceed or fall short of the truth. But there may be many circumstances forming part of the tradition, which you would reject, taking the body of the tradition."

It is urged by the plaintiff that marriage may be proved by general reputation, and that the case at bar is analagous to that. It is true that some authorities favor the idea that uni-

form and general reputation of itself may be received as suffi-
cent proof, *prima facie*, of marriage.    On the other hand, its
sufficiency in any case has been denied, unless there be ac-
companying proof of matrimonial cohabitation.    1 Bish. Mar.
& Div. (4th ed.) s. 438.    In *Northfield* v. *Vershire*, 33 Vt.
110, it was held that evidence of *reputation and cohabitation*,
is competent to prove marriage.    If reputation, in the sense
of general opinion or general belief, is evidence of marriage
when taken in connection with proof of cohabitation, it is dif-
ficult to see why marriage may not be found from it alone, if
it satisfies the mind of the trier that the fact of marriage ex-
ists.    But the truth is, that what is spoken of as proof of mar-
riage by general reputation in the community or among in-
dividuals is not a belief nor opinion as such.    On this subject
Mr. Phillips says :

"For the evidence usually produced in such cases, cannot
properly be called hearsay evidence, as it consists of original
evidence of facts and circumstances ; thus, in the case of gen-
eral reputation as to parties being married, it consists of evi-
dence that they were received in society as man and wife, or
that respectable families in the neigborhood visited them, or
that the woman was churched after childbirth, and the like ;
all which circumstances show that the parties acted or de-
meaned themselves as if they were married, and not living in
a state of concubinage ; and thus the ground of presumption
is afforded, that they were actually married."    1 Phil. Ev.
(ed. with C. H. & E.'s notes) 274.

Says Greenleaf :

"It is frequently said, that *general repute* is admissible to
prove the fact of the marriage of the parties alluded to, even
in ordinary cases, where pedigree is not in question.    In one
case, indeed, such evidence was, after verdict, held sufficient
*prima facie*, to warrant the jury in finding the fact of mar-
riage, the adverse party not having cross-examined the witness
nor controverted the fact by proof.    But the evidence pro-
duced in the other cases cited in support of this position,
cannot properly be called hearsay evidence, but strictly and
truly original evidence of facts, from which the marriage
might well be inferred ; such as evidence of the parties being

received into society as man and wife, and being visited by respectable families in the neighborhood, and of their attending church and public places together as such, and otherwise demeaning themselves in public, and addressing each other as persons actually married." Greenl. Ev. (12th ed.) s. 107.

Bishop says :

"What weight is to be be given to the single fact that parties are reputed to be married, is a question of difficulty ; because, in cases, this fact seldom or never stands alone." 1 Bishop Mar. & Div. (4th ed.) s. 540.

It is not clear from the context, in what sense Bishop used the word "reputed." What has been called evidence of marriage by reputation, can more properly be called evidence of marriage by conduct of the parties alleged to be married and of those with whom they live and associate, in respect to them.

Neither is the question under consideration analagous to cases in which an issue is raised in respect to a person's reputation for truth, good character and the like, for in such cases the very thing to be proved is the general reputation in the community in respect to these phases of personal character.

Somewhat analagous to the point to be decided is the exception to the rule excluding hearsay evidence, which admits it in certain instances in proof of matters of public and general interest; such as the boundaries of counties or parishes, rights of common, claims of highways, etc., of which Best says :

"Now it is obvious that rights of the public or general interest, which are supposed to have been exercised in times past, partake in some degree, of the nature of historical facts, and especially in this, that it is rarely possible to obtain original proof of them. The law accordingly allows them to be proved by general reputation—e. g., by the declaration of deceased persons who may be presumed to have had competent knowledge on the subject; by old documents of various kinds, which, under ordinary circumstances, would be rejected for want of originality, etc. But in order to guard against fraud, it is an established principle that such declara-

tions, etc., should have been made *ante litem motam*."    2 Best. Ev. (5th Am. ed. with Wood's notes.), s. 497.

Best's definition of reputation just quoted is adopted in 2 Rap. & Law, Law Dic., subject, reputation.

It is urged that the contention of the appellant is supported by *Webb* v. *Richardson*, 42 Vt. 465. All that was said in that case in regard to proving matters of pedigree by "near relatives, from reputation in the family," was said in disposing of an exception taken to the admission of a deposition, on the ground of "lack of substance." Portions of the deposition were unquestionably admissible. The court held that the exception was too general to avail the excepting party, and then proceeded to make some remarks in respect to family reputation as evidence in a case of pedigree. *Hurlburt* v. *Hurlburt's Est.*, 63 Vt. 667. The remarks of the court were entirely unnecessary for the decision of the question before it. It was said that the court would presume that the deponent derived his knowledge in a proper manner rather than that it came from an illegitimate source, but no attempt was made to define what was a legitimate source, or what was meant by reputation in the family in such cases. Hence that case cannot be considered as aiding in the decision of this.

It is also said that *Mason* v. *Fuller*, 45 Vt. 29, is authority for the claim urged by the appellant. That was a bastardy proceeding. In the course of the trial it became material to show the death of the complainant's first husband. On cross-examination, and without exception, she testified as follows:

"My husband died two years ago last March. I was not with him at the time of his death, or present at his burial, and have no personal knowledge of his death; I only know from his folks telling me and writing me. They wrote me three letters this winter and his brother told my husband."

Previous to the trial the complainant had remarried. The question of the sufficiency of this evidence to prove the death of the former husband, was raised by a motion to direct a verdict

for the defendant. This court held that the evidence tended to
prove his death. In that case the question of family repute
or family reputation, in the sense of general opinion or belief,
was not raised or discussed. The evidence admitted was
wholly declarations by third parties out of court. The only
ground, either on authority or principle, upon which that
holding can be sustained, is the assumption that the relatives
making the declarations were deceased at the time of the trial,
and that the declarations were made *ante litem motam*. The
record does not disclose whether such was the fact or not.
The contrary not appearing, to sustain the ruling of the county
court and the judgment of this, it is to be presumed that the
evidence showed that they were dead, and that the declara-
tions were made *ante litem motam*. If the declarants were
living at the time of the trial in the county court, then it is
not a case to be followed.

The question involved in the case at bar was not passed
upon in *Hammond* v. *Noble*, 57 Vt. 203.

It will be observed that some of the authorities speak of
repute, reputation and tradition, as convertible terms when
applied to cases of pedigree. Now tradition is knowledge,
belief or practices, transmitted orally from father to son, or
from ancestors to posterity. When these authorities speak
of repute, reputation or tradition in matters of pedigree, we
think they mean such declarations and statements respecting
the pedigree as have come down from generation to genera-
tion from deceased relatives in such a way that even though
it cannot be said or determined which of the deceased rela-
tives originally made them, or was personally cognizant of the
facts therein stated, yet it appears that such declarations and
statements were made as family history, *ante litem motam*,
by a deceased person connected by blood or marriage with
the person whose pedigree is to be established.

It is urged that general reputation, meaning thereby opin-
ion or belief, among relatives or friends, in respect to one's

death must be admissible, otherwise in some cases it would be impossible to prove death, when there was no doubt in respect to it. This contention is not sound. The proof of death is no more difficult than many other facts which are required to be proved to determine rights of litigants. If the person supposed to be dead has been absent and not heard from for seven years, the legal presumption of death at the end of seven years arises. In addition to this any facts or circumstances relating to the character, habits, condition, affections, attachments, prosperity and objects of life, which usually control the conduct of men, and are the motives of their actions, are competent evidence from which may be inferred the death of one absent and unheard from, whatever has been the duration of such absence. *Tisdale* v. *Com. Mut. Life Ins. Co.*, 26 Iowa 170; 96 Am. Dec. 136.

The rule admitting any kind of hearsay evidence in cases of this kind, had its origin in the general necessity growing out of the extreme difficulty of establishing a pedigree, especially after the long lapse of time, and when, as is sometimes the case, the family connection must be traced through several generations. When all the facts relative to a question of pedigree are within the knowledge of living witnesses, and none of such facts are derived from the declarations of deceased members of the family, there is no necessity for resorting to so-called family reputation created wholly by the living, any more than in a case not involving pedigree. The testimony of such witnesses can be produced in court, and from it the triers can find such facts as they think it proves. However much and long the members of a family may have reflected upon and brooded over such known facts, circumstances and incidents of the case, considered in reference to the character and habits of the person whose death is in question, the result of such cogitation is only their opinion or belief based on such facts, circumstances

and incidents. It does not change the nature of the result of such cogitation, to call it "family reputation" instead of its true name, *belief* or *opinion*. It is urged that such opinion is independent evidence, without regard to whether it existed *ante litem motam* or not. This would, in a case like the one at bar, in effect substitute interested heirs for a disinterested jury, for by such opinion the heirs, on the same evidence, pass upon the very question which the jury is to decide, and which is determinative of the rights of the parties. The *ante litem motam* safeguard is ignored, and self-interest given full sway. An exceptional rule of evidence, created to meet a general necessity and promote justice, should not be extended unnecessarily so as to invite and promote fraud, nor should the limitations by which the rule is guarded to secure the truth and prevent deception and fraud, be ignored.

On reason and authority we think that the phrase "general repute in the family," or "general reputation in the family," when applied to cases of pedigree, means declarations of deceased members of the family made *ante litem motam*, and family history and tradition, handed down by declarations of deceased members of the family, made *ante litem motam*. The same would be the case when it is necessary to prove marriage, birth or death for any other purpose. The evidence in respect to the general reputation in the family of Edmund, in respect to his death, was therefore properly excluded.

The appellant also offered to prove that at the time of Edmund's disappearance, it was generally reputed among his friends and acquaintances, both at Grand Forks and Devil's Lake, that he was killed or drowned. and that such was still the reputation there in 1893, but the evidence was excluded.

There are cases in which it has been held that general reputation among a person's friends and acquaintances is admissible to prove his death. Of this character are *Ringhouse* v. *Keever*, 49 Ill. 470 and *Ewing's Heirs* v. *Savary*, 3 Bibb.

235. In the former of these cases it was admitted, as was said, because the deceased left no kindred that were known. In *Ewing's Heirs* v. *Savary* the court said such evidence was admissible when as in that case the death happened out of the state. 2 Rice E. 1224, a recent text book on evidence, goes no further on this subject than to say that a person's death may be proved "by general repute among acquaintances, when he left no kindred, or in connection with family repute where he died abroad," and cites these two cases in support of this statement. Some of the other cases cited by the appellant tend to support his contention in this behalf. But the reasons given in this class of cases for extending the rule admitting hearsay in cases of pedigree, so as to include general reputation of this kind, are far from satisfactory, and if followed to their logical conclusion, would admit general reputation in regard to any fact in issue in every case, whether involving pedigree or not, where there is a shortage of proof, or it is more convenient to obtain evidence of such reputation than to procure evidence not of the nature of hearsay.

*Scott* v. *Ratcliff*, 5 Pet. 81, 8 Book L. ed. 54, is said to hold that general reputation of death is admissible to prove the fact of death, but it does not so hold. In that case, a witness, Mrs. Epps, without stating her informant, testified that she "was told that Mr. Madison was dead." This evidence was held admissible, but the court did not attempt to state its reasons for so holding. It is apparent that the question of reputation in the sense for which the appellant contends, was not involved in that case. The case of *Secrist* v. *Green*, 3 Wall. 744, 18 Book. L. ed. 153, is cited as supporting the claim that such reputation is admissible. In that case a deposition was read to prove the death of one William James. Exceptions having been taken to its admission by Secrist, the court said: "But they cannot avail him for the witness really certifies to every material fact as of his own knowledge although it is competent to prove death and heir-

ship by reputation." It will be observed that what was said in regard to reputation being evidence, was wholly *obiter dictum* nor does it appear in what sense the word reputation was used by the court.

. Among cases holding that such reputation is not admissible, are *Chapman* v. *Chapman*, 2 Conn. 447 ; 7 Am. Dec. 277 ; *Haddock* v. *B. & M. Rd.*, 3 Allen 298 ; *Blaisdell* v. *Bickum*, 139 Mass. 250 ; *Carnes* v. *Crandall*, 10 Iowa 377 ; *Ross* v. *Loomis*, 64 Iowa 432 ; *DeHaven* v. *DeHaven*, 77 Ind. 239 ; *Wilson* v. *Brownlee*, 24 Ark. 586 ; 91 Am. Dec. 523 and note p. 528 ; *Stein* v. *Bowman*, 13 Pet. 209, . 10 Book, L. ed. 207 ; *Vowles* v. *Young*, 13 Ves. Jr. 140 ; *Johnson* v. *Lawson*, 2 Bing. 86, 9 E. C. L. 493.

What has been said in respect to so called family reputation of this character applies with still greater force to this class of reputation. We think the better rule is that which excludes as evidence, such general reputation of death among friends and acquaintances.

Some of the cases holding such reputation admissible, limit its admissibility to cases where the fact to be proved is ancient and better evidence is not attainable. Such a case is *Birney* v. *Hann*, 3 A. K. Marshall, 322 ; 13 Am. Dec. 167. This distinction would exclude the testimony offered.

We think that on another ground also, all the evidence of reputation offered, was inadmissible. The rule of law, admitting any kind of hearsay evidence in cases of pedigree, rests upon the presumption that the declaration, family history or family tradition, constituting the evidence offered, comes from persons having competent knowledge in respect to the subject matter of the declaration, family history or tradition. 1 Phil. Ev. (with C., H. & E.'s notes) 248 ; 2 Stark. Ev. (5th Am. ed. with notes by Metcalf, Ingraham and Gerhard), 605 ; *Whitlock* v. *Baker*, 13 Ves. Jr., 511 ; *Stein* v. *Bowman*, 13 Pet. 209 ; *Hingham* v. *Ridway*, 10 East. 109 ; *Haddock* v. *Boston & Maine Rd.* 3 Allen 298.

When it appears that the evidence of this kind offered, does not come from such a source, this presumption is rebutted, and it becomes inadmissible. *Lynch* v. *Rutland*, 66 Vt. 570. It appeared from the uncontradicted evidence introduced by the appellant, that neither the members of the family, nor the friends and acquaintances of Edmund at either of the places named, nor any one else so far as was known, had any knowledge as to whether Edmund died prior to the death of his father, or is still living. For this reason this evidence was inadmissible.

What the detective, the chief of police and others deposed was told to them about Hurlburt, and was learned by them about him, which was but another way of stating what was told to them, was properly excluded. It belongs to the class of testimony that was held inadmissible as hearsay when the case was here before. Further discussion of the matter is not necessary. We refer to the report of the case in 63 Vt. 667, for the ground and reason of the holding.

The appellant presented several requests to charge, and excepted for alleged non-compliance. Some of these requests were not of sufficient scope. They presented only a partial view of the testimony, and put the case on too narrow ground and too favorable to the appellant. Others of them were better in this regard, and well enough, perhaps, and they were complied with, we think. True, the court did not comply with them categorically, but it did in substance and effect, and put the case to the jury fairly and fully in every aspect presented by the testimony, and in a manner not excepted to. On a careful consideration of this point, we see nothing of which the appellant has a right to complain.

*Judgment affirmed and ordered to be certified to the probate court.*

ROWELL and START, JJ., dissent.

ROWELL, J., dissenting, with whom agrees START, J.

According to the opinion, general reputation in the family, when applied to cases of pedigree, means family history and tradition, handed down by declarations of deceased members of the family, made *ante litem motam*. This limits such reputation wholly to hearsay, for such declarations are nothing else, as they are handed down by relation, the narrator simply telling what he has heard. This is undoubtedly the rule in England; but in this country I think the phrase has a broader and more comprehensive meaning when the word *reputation* as therein used is rightly understood. One primary meaning of reputation is, a thinking over, pondering, considering, reflecting upon. This meaning, to my mind, is involved in the word as used in this connection; and in respect to death, I venture to assert that it is the matured product of the family thought and reflection upon the known circumstances and incidents of the case, considered with reference to the character and habits of the person whose death is in question. That thought and reflection lay hold of those circumstances and incidents and brood over them, gradually therefrom creating belief, which, though weak at first, continually increases and strengthens as the mental operation goes on, until at last it becomes a settled and an abiding conviction in the family mind. Then, and not till then, is the product matured, is reputation accomplished. *This* is family reputation as distinguished from family history handed down by declarations of deceased members of the family. Viewed in this light, such reputation is a fact, of which the law takes cognizance as evidence, because it regards it as sufficiently deserving of consideration as a means of proof to entitle it to be submitted to a jury. If

evidence, it is manifestly original and primary evidence; and therefore it makes no difference with its admissibility that the circumstances and incidents that constitute the seed of that product appear in the case, so that the jury has before it substantially the same material from which to draw inferences and conclusions that the family had.    This is shown by *Cochrane* v. *Libby*, 18 Me. 39.    Much other testimony was introduced in that case to prove death, and it was evidently what the family belief of death was based upon; yet family reputation was received, and the court said it was *prima facie* evidence of death.

In this country the authorities on the subject are conflicting.    Some of the cases, and the text-writers generally, I think, sustain the view for which I contend.  Thus, in *Clark* v. *Owens*, 18 N. Y. 434, the lease in question was for the longest of three lives.    Plaintiff proved the death of two of the persons, and gave evidence that the third, if living, would be eighty years old; that he had not been heard from for fifty years; and that for over forty years he had been reputed among his family and connection to be dead.    The court sustained the admission of the reputation, and said that it is well settled that on all questions of genealogy, and generally on questions relating to births, deaths, and marriages, in the absence of higher evidence, resort may be had to what is commonly said and understood to be true among the immediate relatives and family connections of the party to whom the inquiry relates.    It is true the court said, "in the absence of higher evidence;" but as this evidence, if admissible at all, is original and primary and in no sense secondary, there is no higher evidence in degree; and although with other evidence of death in the case it would be cumulative, yet it would not thereby be rendered inadmissible, nor because other evidence of more probative force could be obtained. It would stand in this regard like evidence generally of equal degree.    If, without the admission of such evidence,

the difficulty of proving death in some cases and the impossibility in others necessitated its admission as a rule of law, as I think they did, then that rule is general in application, and in administering it you cannot take cognizance of the difficulty or the impossibility in the particular case, and admit or reject the evidence as the necessity of the case seems to require.

*Norris* v. *Edwards*, 90 N. C. 382, 47 Am. Rep. 526, when carefully examined, will be found to sustain the admission of general belief prevailing in the family as proof of death.

In a Wisconsin case, the name of which I have not before me, testimony relating to family connection and membership, and to the death and times of death of members, and whether they had been or were married or not, was held admissible in view of the nature of the subject, although based in part on the course of speech and understanding in the family instead of on direct personal knowledge.

In *Ringhouse* v. *Keever*, 49 Ill. 470, reputation of death among acquaintances was admitted because the deceased left no relatives. His death was announced in the newspapers, and he was spoken of by his acquaintances as dead. The court said that in a population as unstable as theirs, the refusal of all evidence of reputation in regard to death unless it came from family relatives, would sometimes render proof of death impossible though there might be no doubt of the fact, and thus the ends of justice be defeated. This case expressly recognizes the admissibility of family reputation in regard to death, and is authority for its admission, for if reputation among acquaintances is admissible, all the more is family reputation. In *Ewing's Heirs* v. *Savary*, 3 Bibb, 235, it was proved that in his family and among his acquaintances where he had resided, the person was reputed to be dead. The court said that such evidence was undoubtedly admissible when, as there, the death happened out of the

state.   In the case at bar, the person whose death is in question, if dead, died out of the state, if that makes any difference, which I think does not.

In *Jackson* v. *Elz*, 5 Cow. 314, the question was whether John Tool died at a certain place in the spring of 1779, at which time he was a soldier in the American army.   Witnesses for plaintiff testified that he was lost or missing when returning from a tavern to the camp on the night of St. Patrick, and that it was afterwards generally reported and believed that he was dead.   Proof of the report and belief was not objected to, but the court said that in analogy to cases of pedigree, etc., it seemed to be admissible, and that the fact that a soldier or any other person was missing at a particular time, accompanied with a report and general belief of his death, must in many cases be not only the best, but the only, evidence of his death that could be supposed to exist. The circumstances of the case in hand make especially applicable what is there said.

In *Jackson* v. *Boneham*, 15 Johns. 226, general opinion in the family that a certain member of it was dead, testified to by a sister of such member, was objected to as hearsay, but held admissible.

I do not care to discuss as a separate proposition the admissibility of reputation among friends and acquaintances, for I think it stands in this regard on much the same ground as family reputation.

The other ground stated in the opinion for excluding all the evidence of reputation is not, to my mind, another ground at all, but only another phase of the same ground already taken by the court; and if that ground fails, this must fail also.

If the position I have taken is right, it is obvious that the fact that the reputation did not antedate the controversy goes only to its weight as evidence, not to its competency.