## NORTHERN PAC. RY. CO. v. KING et al.

(Circuit Court of Appeals, Ninth Circuit. October 3, 1910.)

### No. 1,815.

1. DEATH (§ 58*)—ISSUES—BURDEN OF PROOF.

Where, in an action for wrongful death, issue is taken on the fact of death, the burden of proving it is on the plaintiff.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 78; Dec. Dig. § 58.*]

2. DEATH (§ 75*)—PROOF—CIRCUMSTANTIAL EVIDENCE.

In an action for wrongful death, the fact of death may be proved by circumstantial evidence.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 93; Dec. Dig. § 75.*]

3. EVIDENCE (§ 288*)—PEDIGREE—DEATH—HEARSAY.

The rule that under some circumstances the fact of death, as well as of birth, marriage, pedigree, etc., may be proved by hearsay evidence, is limited to the members of the family; the tradition being admissible only when coming from persons having such a connection with the party to whom it relates that it is natural and likely, from their domestic habits and connections, that they spoke the truth and could not have been mistaken.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1147; Dec. Dig. § 288.*]

4. DEATH (§ 75*)—PROOF OF DEATH—INFERENCES.

Where a passenger was alleged to have died from injuries and the amputation of his leg, but it was affirmatively shown that he survived such injuries for a week or 10 days, no inference of his death could be properly drawn therefrom.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 93; Dec. Dig. § 75.*]

In Error to the Circuit Court of the United States for the Northern Division of the Western District of Washington.

Action by Margaret King and others against the Northern Pacific Railway Company. Judgment for plaintiffs, and defendant brings error. Reversed and remanded.

Carroll B. Graves and C. A. Winders, for plaintiff in error.

Carl J. Smith and Frank C. Park, for defendants in error.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

ROSS, Circuit Judge. This action was brought in the court below, on behalf of the two minor children named, against the Northern Pacific Railway Company, which is the plaintiff in error here, to recover damages alleged to have been sustained by reason of the alleged death of their father, H. A. King, which the complaint averred resulted from injuries received by him while attempting to board a passenger train of the plaintiff in error at its station called Taft, in the state of Montana. During the progress of the trial Mrs. King was joined as a party plaintiff.

The negligence charged in the complaint against the railway company was the alleged sudden starting of its train from the station, without giving H. A. King, who had purchased a passenger ticket from the company's agent at Taft, sufficient time to get upon the train, and in permitting snow and ice to remain between the front of its depot and its tracks at that station, thereby making it dangerous for passengers to attempt to board the trains of the company at that point.

The alleged serious injury of H. A. King in his attempt to board a train of the company at Taft station was not denied by the defendant company in its answer; but it did therein expressly deny his alleged death, and also put in issue each of the allegations in respect to negligence on its part, and pleaded affirmatively that the injuries sustained by King at the time in question were the result of his own negligence in attempting to board a moving train.

Inasmuch as the action was founded on the alleged death of King, in respect to which alleged fact issue was taken by the defendant company, the burden of proving his death was, of course, upon the plaintiffs. It is quite true that the fact of one's death may be proved by circumstantial evidence, provided the facts and circumstances going to show such death be sufficiently strong. We so held in the case of The San Rafael, 141 Fed. 270, 72 C. C. A. 388, and the Supreme Court so held in the case of Fidelity Mutual Life Association v. Mettler, 185 U. S. 308, 22 Sup. Ct. 662, 46 L. Ed. 922.

It is also true that under some circumstances the fact of death, as well as of birth, marriage, pedigree, and the like, may be proved by hearsay evidence. "From necessity, in cases of pedigree," said the Supreme Court in the case of Stein v. Bowman, 13 Pet. 207, 219, 10 L. Ed. 129, "hearsay evidence is admissible. But this rule is limited to the members of the family, who may be supposed to have known the relationship which existed in its different branches. The declarations of these individuals, they being dead, may be given in evidence to prove pedigree; and so is reputation, which is the hearsay of those who may be supposed to have known the fact, handed down from one to another, evidence. As evidence of this description must vary by the circumstances of each case, it is difficult, if not impracticable, to deduce from the books any precise and definite rule on the subject. 'It is not every statement or tradition in the family that can be admitted in evidence.' The tradition must be from persons having such a connection with the party to whom it relates that it is natural and likely, from their domestic habits and connections, that they are speaking the truth, and that they could not be mistaken."

It has been held by many courts that the death of an individual, though disconnected with any question of pedigree, and for whatever purpose sought to be established, may be proved by hearsay, subject to the same restrictions that are applicable to cases where matters of pedigree are involved; but no case has been cited, and we know of none, which holds that under circumstances like those here presented, it is competent to prove the basic and controverted

fact by hearsay testimony, pure and simple. Here the accident resulting in the injury of H. A. King had but recently occurred, and whether or not it resulted in his death was susceptible of easy proof. The record shows that the accident resulted in the amputation of one of his legs, that he received other injuries about his body, and that he was taken from Taft station to a hospital at Wallace, Idaho, by the witness Austin, who was questioned and answered on the trial, among other things, as follows:

"Q. After Mr. King was injured, you went down there and seen them take him out, did you? A. Those whistles brought me out, and they were picking up a man to bring him back where the cars was, to the station. I met a friend, Mr. Leisure, and says: 'What is the matter?' He says— Mr. Graves: Never mind about that. A. I came up there to inquire; and they said my friend was hurt, Mr. King. While these people carried him up to the hospital I goes along behind the station, kind of ahead of them, and followed him right into the hospital. After that they amputated his leg, and I took him to Wallace the same day on the train going west. Q. On the same train? A. No; on the train going west. Q. What was his condition as you saw it when you were taking him to Wallace? A. His condition was— There was— I had to hold my arm under his back all the way—moved my arm up and down his back all the way to Wallace. He complained about it hurting him along his back. I carried my arm under him all the way from Taft to Wallace. Q. Do you know what injuries he had internally there? A. No; I don't know what they were. I know he was injured, because I changed him off of my arms several different times. Q. One of his legs was amputated at that time? A. Yes, sir. Q. How about the bruises on his body? A. The bruises on the body was a cut on the head— I think two cuts on the head was all that I could see, and his hand was torn a little in places. Q. Did you see his body? A. No; I didn't see his body. Q. Did he complain of pain? A. Yes, sir; he complained of pain in his back and side. Q. How about his head? A. His head—he didn't complain of his head very much, but this other pain seemed to be such a strong pain. Q. How long did you stay at Wallace with him? A. I stayed that day and night with him. Q. What was his condition, as to whether it appeared to you he would survive or not, from these injuries? A. I did not think he would get through, according to the agony he was in going to Wallace from Taft. He suffered agony all the way. Q. How long after that did he die? Mr. Graves: I object to that, unless the witness has knowledge of the fact. The Court: Overruled; exception allowed. A. I think it was about a week or 10 days after that he died."

The witness Lynch was also permitted, over the objection and exception of the defendant, to give hearsay testimony of the death of H. A. King, as follows:

"Q. (By Mr. Park, Attorney for Plaintiffs). You went over to Wallace, Idaho, shortly after Mr. King's injury? A. The following day, or the day I got the telegram—left that evening. Q. You saw him there in the hospital, did you? A. Yes, sir. Q. What was his condition at that time, when you saw him? A. Well, the doctors didn't say— Q. What was his condition, if you know? A. Well, he looked pretty bad to me. He was lying there in the hospital, and he could hardly speak when I went in there. Q. Which one of his legs was amputated at that time? A. The right leg. Q. How about bruises or injuries, at that time, if any? A. Yes, sir; his arms were bruised up. He complained of a pain in his side—right in his back; I don't remember where it was; and his head was cut. Q. Do you remember whether or not his ribs were broken, or what his condition was there? A. No, sir; he said he could not move. It would hurt him when he moved. Q. And how about the bruises on his head? A. Well, was a big lump and a cut there. Q. How long after you were there did he die? Q. (By Mr. Graves). Were you there when he died? A. No, sir. Mr. Graves: We object to anything not within the witness' knowledge. The Court: I will overrule the objection; exception al-

lowed. Q. About how long after you were there did he die? A. I believe I stayed two days. I came back, and on the way I got word, two days after, that he was dead. I am not positive."

If it be true that King died as the result of the injuries received by him, certainly the fact could have been easily shown by his attending· physician, or by the hospital attendants, or the undertaker, or by other direct evidence. Instead, the plaintiffs seem to have been content to introduce, over the objection and exception of the defendant, the statement of third persons, still alive, so far as appears, and whose names were not even given, to the effect that King died. As a matter of course, no inference of his death could be properly drawn merely from his injuries and the amputation of his leg; it having been affirmatively shown by the plaintiffs that he survived such injuries and amputation for a week or 10 days. See Blaisdell v. Bickum, 139 Mass. 250, 1 N. E. 281; Wilson v. Brownlee, 24 Ark. 586, 91 Am. Dec. 523; Chapman v. Chapman, 2 Conn. 347, 7 Am. Dec. 277; Carnes v. Crandall, 10 Iowa, 377; Iberia Cypress Co. v. Thorgeson, 116 La. 218, 40 South. 682; In re Estate of Hurlburt, 68 Vt. 366, 35 Atl. 77, 35 L. R. A. 794.

For the error above pointed out, the judgment is reversed, and the cause remanded to the court below for a new trial.